FIRST STATE BANK OF MONTGOMERY v. FIRST NAT. BANK OF NAVASOTA.

(Court of Civil Appeals of Texas. Galveston. March 2, 1912.)

1. BANKS AND BANKING (§ 40*)—TRANSFER OF CORPORATE STOCK—LIEN.

Rev. St. 1895, art. 666, providing that stock shall be transferable only on the books of the corporation in the manner prescribed by the by-laws, if applicable to a bank organized under Acts 29th Leg. (1st Ex. Sess.) c. 10, only affects the right to dividends, the privilege of voting, and other rights of a stockholder; and a pledgee of bank stock acquires a lien thereon, though there is no transfer on the books of the bank.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 49, 51–54; Dec. Dig. § 40.*]

2. BANKS AND BANKING (§ 39*) — STOCK — LIEN FOR UNPAID ASSESSMENTS.

Rev. St. 1895, arts. 667, 668, authorizing the directors to require subscribers to pay the amount subscribed as required by the by-laws, and providing that, where any stockholder neglects to pay any installment, the directors may declare his stock and previous payments forfeited to the corporation, refer only to unpaid subscriptions to stock, and do not apply to assessments on bank stock, as authorized by the banking act (Acts 29th Leg. [1st Ex. Sess.] c. 10) §§ 40, 50; and a failure of a holder of bank stock to pay an assessment does not justify the forfeiture of the stock, and does not affect the rights of a pledgee of the stock under no personal liability to pay the assessment.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 44–48; Dec. Dig. § 39.*]

Appeal from Grimes County Court; Hood Boone, Judge.

Action by the First National Bank of Navasota against the First State Bank of Montgomery and another. From a judgment for plaintiff, defendant named appeals. Affirmed.

Nugent & McMahon, for appellant. Pat N. Fahey and Gordon Boone, for appellee.

REESE, J. N. O. Lauve, being at the time cashier of the First State Bank of Montgomery, Tex., and the owner of five shares of its capital stock, of the par value of $100 per share, on February 4, 1910, borrowed of the First National Bank of Navasota, Tex., $500, for which he executed his promissory note, and to secure the same delivered, by way of pledge, to said bank the said five shares of stock indorsed in blank. Upon maturity of the note, the Navasota bank instituted this action in the county court against said Lauve upon the note, and to foreclose its pledgee's lien on the stock. The First State Bank of Mont-

gomery, Tex., was made a party defendant, upon allegations that it set up some sort of interest in or claim upon said stock, and foreclosure of said lien was sought as to the said claim. Lauve did not answer. The Montgomery bank answered, asserting a superior lien on said stock by reason of the facts which will be hereafter set out in our conclusions as to the facts, prayed that plaintiff be denied foreclosure, and that the forfeiture of the stock by the Montgomery bank be declared valid, and in the alternative prayed that, in event plaintiff's prayer for foreclosure be granted, and said forfeiture be set aside and the stock ordered to be sold, it be sold subject to the 100 per cent. assessment against the same, hereinafter referred to. By supplemental petition, plaintiff denied that defendant had any lien on said stock, or any authority to forfeit the same in the manner and upon the grounds upon which the forfeiture was declared.

There was judgment by default against Lauve, and upon trial, without a jury, judgment was rendered against the Montgomery bank, decreeing the forfeiture of the stock unauthorized and invalid, and foreclosing plaintiff's lien as against the defendant bank, which was decreed to be superior to any right in or claim upon said stock by said bank. The Montgomery bank was denied any relief upon its cross-action. From this judgment, the Montgomery State Bank appeals.

As there does not appear to be any dispute as to the facts, we here adopt the conclusions of fact as found by the trial court, as follows:

"On February 4, 1910, the defendant N. O. Lauve borrowed of plaintiff, the First National Bank of Navasota, Tex., the sum of $500, for which he made, executed, and delivered to said plaintiff the note sued on and in evidence. Said note contained a recitation that five shares of the capital stock of the First State Bank of Montgomery was deposited with plaintiff as collateral to secure the payment of said note.

"At the time of execution of the note, the said defendant Lauve indorsed and delivered to plaintiff, as collateral security to the payment of said note, five shares of the capital stock of the defendant the First State Bank of Montgomery, evidenced by certificate No. 15 for five shares, of the par value of $100 per share, issued to the defendant N. O. Lauve by the said First State Bank of Montgomery, Tex., on the 27th day of November, 1907. Said certificate recited that said five shares were fully paid and nonassessable, and that said five shares were in fact fully paid.

"The defendant the First State Bank of Montgomery is, and was at the time of the issuance of said certificate for said five shares of stock, and at the time of the execution of said note, as aforesaid, a corporation duly organized and existing under the

banking laws of the state of Texas, and had an authorized capitalization of $10,000, and that the defendant N. O. Lauve, at the date of the issuance of said stock, and at the date of the execution of said note by him to plaintiff, was the cashier of said defendant the First State Bank of Montgomery, Tex.

"Plaintiff, at the time it received said shares of stock as collateral, as aforesaid, had no notice or knowledge of any indebtedness of the said N. O. Lauve to the defendant the First State Bank of Montgomery, and had no notice or knowledge of any defalcations of the funds of said defendant bank by said Lauve.

"On February 14, 1910, the State Bank Examiner discovered from an examination of said defendant the First State Bank of Montgomery that there were certain defalcations and shortages in the accounts of the said N. O. Lauve as such cashier, and that the capital of said bank had been greatly impaired. Thereupon said Bank Examiner declared the capital of said defendant bank to be impaired and notified W. B. Wood, W. T. Nobles, L. A. Peel, and John F. Davis, local directors of said bank, that, unless the impairment was made good by assessment of 100 per cent. on its authorized capital stock by 9 a. m. of February 15, 1910, the doors of said bank would be closed, and the Commissioner of Banking for the state would take charge of the affairs of said bank. In order to prevent such action, the said W. B. Wood, W. T. Nobles, L. A. Peel, and John F. Davis, in their individual capacities, placed said sum of money in said bank, to the credit thereof, to make good the impaired capital. Said parties paid said sum into said bank with the understanding between them and the said Bank Examiner that they were to be reimbursed to the extent of any amount they paid in over and above 100 per cent. of their respective holdings of stock in said bank out of the fund to be collected from the other stockholders upon the basis of an assessment of 100 per cent.

"After said sum of money had been paid in, as aforesaid, by the said Wood, Nobles, Peel, and Davis and the impairment made good the board of directors of said bank, in special session, on February 15, 1910, called for an assessment of 100 per cent. on the capital stock of said bank "to cover losses of recent date on account of wrongful manipulation of the books by cashier, N. O. Lauve," and as this amount had already been put up by Wood, Nobles, Peel, and Davis, as recited in the minutes of the meeting it was decided to reimburse them from funds drawn from those not yet having paid in as per amount of their stock. At said date shares were owned as follows: W. B. Wood, 10 shares; W. T. Nobles, 10 shares; N. O. Lauve, 5 shares; W. L. Moody, Jr., 20 shares; W. L. Moody & Co., 5 shares;

L. A. Peel, 5 shares; John F. Davis, 5 shares; Ward Templeman, 10 shares; F. B. Moody, 20 shares; American National Insurance Company, 10 shares.

"On March 8, 1910, at a special session of the directors, a resolution was adopted by the directors present, W. B. Wood, J. F. Davis, L. A. Peel, and W. T. Nobles, constituting a majority of the board of directors, reciting the levy of an assessment of 100 per cent., and that all holders of stock, except the $500 owned by N. O. Lauve and held as collateral by the First National Bank of Navasota, Tex., had paid their assessments, and that said Lauve and said First National Bank had been duly notified of said assessment, and had failed and refused to pay the same, and resolving to cancel, annul, and forfeit to the use and benefit of the said First State Bank of Montgomery said five shares of stock, unless the said Lauve or the said First National Bank of Navasota, Tex., paid said assessment within 30 days, and directing that notice of such intention and resolution be mailed to said parties. Both said parties were so notified, and the First National Bank of Navasota filed written protest against any such contemplated action. Neither the said Lauve nor the said First National Bank of Navasota, Tex., paid said assessment.

"On April 28, 1910, at a regular monthly meeting of the board of directors of the First State Bank of Montgomery, a resolution was adopted, canceling and forfeiting said Lauve stock to the use and benefit of the First State Bank of Montgomery, Tex. After said forfeiture, the said First State Bank of Montgomery issued new stock, in lieu of such stock, to Wood, Nobles, and Peel, above named. At the time of the levy of the assessment, and at the time of said forfeiture, the said First State Bank of Montgomery knew that the said Lauve stock was held by the First National Bank of Navasota, Tex., as an innocent pledgee, in good faith, for value.

"Default was made by the said Lauve in the payment of the note sued on, and same was placed by plaintiff in the hands of attorneys for collection, and for such service plaintiff has contracted and agreed to pay said attorneys more than 10 per cent. on the principal and interest due on said note. No part of said note, principal, interest, or attorney's fees has been paid to plaintiff, and the whole thereof is due, unpaid, and owing to plaintiff."

The certificate of stock contained on its face the following: "Transferable only on the books of the corporation in person or by attorney on surrender of this certificate."

[1] Appellant admits in its brief that its case substantially depends upon the issue as to whether the facts disclosed gave it a lien on the stock superior to the lien asserted by appellee. This assertion of lien rests upon the indebtedness of Lauve to the bank, existing at the time of the pledge of the stock. Neither the charter nor by-laws of the bank were offered in evidence. Appellant rests its claim of lien upon the fact that, by the provisions of article 666, R. S. 1895, the stock was transferable only upon the books of the corporation. This article is as follows: "The stock of any corporation created under this title shall be deemed personal estate; and shall be transferable only on the books of the corporation in such manner as the by-laws may prescribe."

Admitting, for the sake of argument, that this article of the statute applies to the transfer of stock in state banks organized under the provisions of the act of 1905 (chapter 10, Acts First-Called Session 29th Legislature), which is, at least, doubtful, inasmuch as its provisions are expressly limited to corporations created under title 21 of the Revised Statutes, we think it is clearly established by the authorities that such provision for the transfer of stock in a corporation does not have the effect claimed by appellant. Appellant, in support of its contention, cites Bank v. Laird, 2 Wheat. 394, 4 L. Ed. 269. We are satisfied to adopt here appellant's own statement as to the point decided in that case, which is supported by the text of the opinion. Says appellant: "In this case, by the act of incorporation, the shares of any individual stockholder were transferable only on the books of the bank, according to the rules (conformably to law) established by the president and directors; and all debts due and payable to the bank by a stockholder must be satisfied before the transfer should be made, unless the president and directors should direct to the contrary. Justice Storey, delivering the opinion of the court, held that no person could acquire a legal title to any shares, except under a regular transfer, according to the rules of the bank; and if any person takes an equitable assignment, it must be subject to the rights of the bank, under the act of incorporation, of which he is bound to take notice."

Appellant also cites 26 Am. & Eng. Ency. of Law, 867, from which we quote: "In the absence of a statute or charter provision or contract authorizing it, a corporation is not entitled to a lien on shares of its stock owned by one indebted to it. There is, however, much of equity and justice in such a lien, and the Legislatures in many jurisdictions have, either by a general law applicable to all corporations, or by a provision in the charter of particular corporations, provided for such lien in favor of the corporation. Such lien is limited in operation and extent by the terms of the statute or charter, and can arise and be enforced only in the event and under the facts provided therein. When a lien has been so declared, the courts in enforcing it have regarded it as intended for the security of the corporation. The right of

the corporation to assert such a lien is not affected by the fact that the organization of the corporation is defective. Where such provisions exist, the right to a lien comes into existence simultaneously with the creation of the indebtedness. In determining whether or not the language used in framing a statute or charter provision creates a lien in favor of the corporation, the general rules for ascertaining the legislative intent, as applied to the construction of statutes, are resorted to. Statute or charter provisions that shares shall be transferable only on the books of the corporation, *and that no shareholder shall be permitted to transfer, so long as he is indebted to the corporation*, are the usual means adopted. In some instances, the statutes specifically declare that the corporation shall have a lien for any indebtedness owing to it by a shareholder. A statute providing that the board of directors may, at its option, prohibit the transfer of the shares of the stockholder *indebted to the company* does not of itself give a lien to the corporation. Until such option is exercised, no lien is created."

These citations are, we think, a complete answer to appellant's contention that it had a lien on this stock to secure the payment of Lauve's indebtedness to the bank. If it had been expressly provided in the charter, or in the law under which the bank was organized, that shares of stock could only be transferred upon the books of the company, as was written in the face of the certificate, there is nothing in the authorities cited to support appellant's contention. There would still be lacking the essential requirement that no shareholder shall be permitted to transfer his stock, so long as he is indebted to the company. A mere naked provision that stock shall only be transferred on the books of the corporation is intended, so far as the corporation is concerned, only to affect the right to claim dividends, the privilege of voting, and other rights of a stockholder. 1 Cook, Stock and Shareholders, § 379; Johnston v. Laflin, 103 U. S. 804, 26 L. Ed. 532; Noyes v. Spaulding, 27 Vt. 420.

Such lien may be created by statute or by charter, and, it has been held, by by-laws; but the weight of authority seems to hold that, if created only by a by-law, such lien cannot be asserted against a bona fide transferee or pledgee who has no notice of such by-law. 1 Cook, Stock and Shareholders, § 522. However, in the present case, there is no evidence of such by-law nor of such provision in the charter; but the claim rests alone upon article 666, R. S., and the statement on the face of the certificate that the stock is only transferable on the books of the company. The authorities are all against appellant's contention as to such lien. 2 Cook, Corp. § 521 et seq.; Brinkerhoff-Farris Trust Co. v. Home Lumber Co., 118 Mo. 447, 24 S. W. 129; Bank v. Durfee, 118 Mo. 431, 24 S. W. 133, 40 Am. St. Rep. 396. The two cases cited from the Supreme Court of Missouri are well supported by authority, and are practically decisive of the present case.

[2] We are inclined to think that under the provisions of sections 40 and 50 of the banking act the board of directors had the authority to make the assessment called for to make good the impairment of the bank's capital. It is provided by section 40 that, "whenever the superintendent shall have reason to believe that the capital stock of any corporation, subject to the provisions of this act, is reduced, by impairment or otherwise, below the amount required by law, or by its certificates or articles of incorporation, he shall require such corporation to make good the deficiency." It would seem to be the natural and proper way to make good the deficiency to call on the stockholders to contribute pro rata the money necessary for such purpose, and we are inclined to think that such assessment, properly made, would create a personal liability on the part of the stockholders; but nothing in the banking act affords any ground for holding that such assessment imposes any personal liability upon one to whom the stock had been pledged as collateral security. Such liability would be entirely inconsistent with his rights as a bona fide holder of the stock, without notice of any fact impeaching its value in his hands. But, conceding the right of the directors to levy the assessments on the stock, there cannot be found anything in the law to authorize the forfeiture of the stock at all, and certainly not for its forfeiture in the hands of an innocent holder for value. The banking law does not provide any specific method for the enforcement of payments of these assessments. Certainly such a drastic remedy as forfeiture of the stock could not be enforced, unless it was specifically authorized. To sustain the authority for the forfeiture in the present case, appellant relies upon the provisions of article 668, R. S. This article must be read in connection with article 667, and clearly refers to unpaid subscriptions to stock, in the first instance, which may be paid in installments, and cannot, by any course of reasoning, be made to apply to assessments upon bank stock which, under the law, is required to be fully paid up before the charter is granted.

We have examined carefully the several assignments of error presented in appellant's brief. We think none of them presents any grounds for reversal of the judgment. Whatever may be the rights of the bank in the premises, two propositions, we think, may be said to be clearly established: First, that the appellant had no lien upon the stock to secure the indebtedness of Lauve, which really renders it unnecessary to decide any of the other questions presented; and, second, the attempted forfeiture of the stock

by the board of directors did not affect the rights of appellee as pledgee.

We find no error in the record, and the judgment is affirmed.

Affirmed.