**SEIDEL v. SHAW, Banking Commissioner, et al. (No. 9164.)**

Court of Civil Appeals of Texas. Galveston.
May 29, 1928.

**1. Banks and banking ☞40—Statute providing that stock is transferable only on corporation's books does not apply to banking corporations (Rev. St. 1925, arts. 342–548, 1334).**

Rev. St. 1925, art. 1334, providing that "stock of any corporation created under this title * * * shall be transferable only on the books of the corporation in such manner as the by-laws may prescribe" relates only to private corporations, and does not apply to those with banking privileges which are authorized under articles 342–548.

**2. Banks and banking ☞48(1)—Defendant was not bank "stockholder" on date of insolvency within statute relating to stockholder's liability where he had sold stock, but it was not transferred on bank's books (Rev. St. 1925, art. 535; Const. art. 16, § 16).**

Under Rev. St. 1925, art. 535, and Const. art. 16, § 16, on which statute rests, relating to bank stockholder's liability for bank debts for twelve months after date of transfer, defendant was not stockholder within statute on May 17, 1926, when banking commissioner took charge of insolvent bank, where he had sold stock on April 1, 1926, but stock had not been transferred on bank's books, since statute indicates that an actual owner only is meant.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Stockholder.]

**3. Banks and banking ☞48(1)—Bank stockholder transferring stock when bank was solvent held not liable for bank's debts, absent proof debts existed at date of transfer (Rev. St. 1925, art. 535; Const. art. 16, § 16.)**

Stockholder of bank transferring stock while bank was solvent *held* not liable for debts of bank under Rev. St. 1925, art. 535, and Const. art. 16, § 16, and banking commissioner could not collect assessment against him in absence of proof that debts existed at date of transfer of stock.

Appeal from District Court, Harris County; Roy F. Campbell, Judge.

Action by James Shaw, Banking Commissioner, against W. H. Seidel and another. From a judgment for plaintiff, defendant Seidel appeals. Reversed and remanded.

Boyles, Brown & Scott and Frank G. Dyer, all of Houston, for appellant.

Harry Holmes, of Houston, for Shaw.

W. P. Hamblin, of Houston, for Wright.

GRAVES, J. The trial court, sitting without a jury, gave the state banking commissioner judgment against Seidel as the record holder on that date of fifteen $100 par value shares of stock in the defunct State Guaranty Bank of Goose Creek, pursuant to a 100 per cent. assessment such official had made against the same on May 17, 1926, at the same time denying Seidel's plea by cross-action for a like recovery in his own behalf over against the appellee Thomas Wright, to whom he alleged he had transferred the stock on April 1, 1926, under the latter's agreement to pay this assessment, as well as all others against it, and upon whom he had relied to have the transfer made upon the books of the bank.

In doing so, the court filed findings of fact and law, from which only the first two formal ones are omitted, as follows:

"Findings of Fact.

\*   \*   \*   \*   \*   \*   \*   \*

"(3) I find that the defendant W. H. Seidel, on June 8, 1925, became the owner of record of certificate No. 40, for 10 shares of stock in the State Guaranty Bank of Goose Creek, Tex., of the par value of $1,000, and of certificate No. 41, in the State Guaranty Bank of Goose Creek, Tex., for 5 shares of the par value of $500, and that said stock has never been transferred on the books of said State Guaranty Bank of Goose Creek, Tex.

"(4) I find that on or about May 17, 1926, said State Guaranty Bank, Goose Creek, Tex., was insolvent and unable to pay its debts and its assets insufficient to pay off and discharge its legal obligations; that on said date Charles O. Austin, banking commissioner of the state of Texas, took charge of said insolvent bank, as provided by the laws of the state of Texas, for the purpose of liquidating the affairs of said bank, winding up its affairs and discharging its legal obligations.

"(5) I find that on or about May 17, 1926, plaintiff Charles O. Austin, banking commissioner of the state of Texas, as provided by law, did assess each stockholder of said State Guaranty Bank of Goose Creek, Tex., and each stockholder who had transferred his stock within 12 months prior to said time, an amount equal to the par value of such shares so owned by him within said period.

"(6) I find that, at the time of the levy of such assessment by the banking commissioner of the state of Texas, W. H. Seidel was the owner of record of 15 shares of the capital stock of said State Guaranty Bank of the par value of $1,500.

"(7) I find that on or about, or some time just prior to April 1, 1926, the directors of the State Guaranty Bank of Goose Creek, Tex., levied a voluntary assessment against the stockholders of 100 per cent.

"(8) I find that on April 1, 1926, the defendant, W. H. Seidel, was the owner of 15 shares of the capital stock of the State Guaranty Bank of Goose Creek, Tex., of the par value of $1,500.

"(9) I find that some negotiation was had between W. H. Seidel and Thomas J. Wright, on or about April 1, whereby Thomas J. Wright agreed with W. H. Seidel, that, if Seidel would transfer to him the 15 shares of stock which he owned in the State Guaranty Bank of Goose Creek, Tex., that he (Thomas J. Wright) would pay the assessment that was then due against the stock, and being the voluntary assessment made by the directors of the bank.

"(10) I find that, in pursuance of such agreement, W. H. Seidel signed a transfer on the back of the stock certificates and delivered same to Thomas Wright, and that Thomas Wright paid the $1,500 assessment that had been made against the stock by the directors.

"(11) I find that no transfer was ever made upon the books of the bank, transferring the stock from W. H. Seidel to Thomas Wright, and at the time the banking commissioner took charge of said bank, on May 17, 1926, and, at the time that the banking commissioner assessed the stockholders of said bank with a 100 per cent. assessment, that said stock stood on the books of the bank in the name of W. H. Seidel.

"(12) I find that Thomas J. Wright only agreed to pay the assessment that was due on April 1, 1926.

"(13) I find that during the pendency of this suit James Shaw succeeded Charles O. Austin as banking commissioner of the state of Texas, and that he was substituted as plaintiff in this cause in lieu of and in place of Charles O. Austin.

"Conclusions of Law.

"From the above findings of fact, I conclude as a matter of law that the defendant W. H. Seidel, being the owner of record of said stock at the time the bank was placed in the hands of the banking commissioner and at the time that the banking commissioner levied the assessment, he is liable therefor, and judgment has been accordingly rendered in favor of plaintiff and against the defendant W. H. Seidel.

"I conclude as a matter of law that there was no secondary liability on the part of Thomas Wright, for the assessment against the defendant W. H. Seidel, and, there being no agreement to pay said future assessments, that the defendant W. H. Seidel is not entitled to recover against the defendant Thomas Wright, and judgment has accordingly been rendered that he take nothing on his cross-action."

The fact findings are not only not attacked upon the appeal, but are made the basis of appellant Seidel's three propositions for a reversal. In substance these are:

Since Seidel sold, transferred, and assigned by indorsement his stock to Wright on April 1, 1926, delivering the indorsed certificates therefor to him on that date, and since, upon the one hand, appellee Shaw neither pleaded nor proved either that the bank was then insolvent or in debt, nor that its charter or by-laws required the stock to be transferred upon its books as a prerequisite to a valid transfer, and on the other hand appellee Wright failed to have the transfer made to him recorded on the books of the bank: (1) Appellant could not be held liable for debts only shown to have existed on May 17, 1926, under article 16, § 16, of the Constitution of Texas, and article 535 of our Revised Statutes making it effective, as a shareholder who had transferred his stock within less than 12 months prior to that date; (2) the transfer, although not recorded on the bank's books, passed title to the stock to Wright on April 1, 1926, hence judgment against Seidel as being still a stockholder on May 17, 1926, on the mere finding that no such recorded transfer had ever been made, was improper in the absence of any showing that it was required either by statute or under the bank's charter or by-laws; (3) Wright, being the legal owner of the stock on the date of the declaration of insolvency of the bank, was liable over to appellant for the amount of the judgment.

Authorities cited in support of the first proposition are article 16, § 16, Constitution of the State of Texas; article 535, Revised Civil Statutes of Texas 1925; Chapman v. Sparks (Tex. Civ. App.) 283 S. W. 338; Pool v. Chapman (Tex. Com. App.) 283 S. W. 762; Orndorff v. Austin (Tex. Civ. App.) 294 S. W. 681—while those under the second are these: Article 1334, Revised Civil Statutes of Texas, 1925; First State Bank v. First National Bank (Tex. Civ. App.) 145 S. W. 693; Orndorff v. Austin (Tex. Civ. App.) 294 S. W. 681, supra; Simmons v. Arnim, 110 Tex. 309, 220 S. W. 66; Seibert v. Richardson, 86 Tex. 295, 24 S. W. 261 at page 262; 36 Cyc. 1122; Fletcher's Cyclopedia of the Law of Corporations, vol. VI, § 4205, p. 7309, section 3789, p. 6317.

A majority of the court agree that the first of these contentions is sound, while all concur that the second one is. Because of this unanimity of opinion touching the latter, it will be briefly commented upon first. The bank's charter was in evidence, but contained no provision that the stock should be transferable only on its books; the by-laws were not offered; nor was there other evidence even tending to indicate that such a requirement was prescribed in them or anywhere else existed.

[1] No statute of Texas enjoins it. Article 1334, title 32, seeming to relate only to private corporations; hence having no application to those with banking privileges, which are authorized under a different one—that is, title 16. First State Bank v. First National Bank (Tex. Civ. App.) 145 S. W. 693; Orndorff v. Austin (Tex. Civ. App.) 294 S. W. 681.

[2] R. S. art. 535, pursuant to which appellant was sued and the liability fastened upon him, is in these terms:

"If default shall be made in the payment of any debt or liability contracted by any bank, savings bank or bank and trust company, each stockholder of such corporation, as long as he owns shares therein, and for twelve months after the date of a transfer thereof, shall be personally liable for all debts of such corporation existing at the date of such transfer, or at the date of such default, to an amount double the par value of such shares."

Not only does this act fail to specify that the stockholder intended to be reached is only the apparent one according to the books of the bank at the time rather than 'he who is then one in fact, but its express designation of him as "each stockholder, as long as he owns shares therein, and for twelve months after the date of a transfer thereof," rather ·than one as shown by some unmentioned record of the bank, upon the principle of exclusion (expressio unius est exclusio alterius), seems to negative that intent and to indicate that an ·actual owner only was meant. The constitutional provision, on which this statute rests, article 16, § 16, is of like purport.

For aught, therefore, that appears in the trial court's findings, or in the record, the actual sale upon! valid consideration 'the other findings show appellant made of his· stock to Wright on April 1 of 1926 was in accord with every requirement of law or contract, either as affected the immediate parties thereto or the bank's creditors, and completely terminated his ownership for all purposes on that date, yet the judgment against him apparently rests upon the assumption that he was nevertheless the record owner of it 2½ months later when the banking commissioner made thè assessment against it. The rule in such circumstances is thus briefly stated in Fletcher's Cyclopedia, supra, vol. VI, § 4205, p. 7309:

"If there is no charter or statutory requirement that transfers of stock shall be registered. on the books of the corporation, registration is not necessary either to relieve the transferor from liability or to render the transferee liable. By the weight of authority, when there is a charter or statutory provision that transfers must be made or registered on the books of the corporation, an unregistered transfer, although it may be good as between the parties, is not good as against creditors, and will not relieve the transferor from his statutory liability, or from liability for the amount remaining unpaid on his stock."

The latest cited case upon the subject, Orndorff v. Austin, supra, does not hold to the contrary upon the equivalent of the same state of facts, because there was present in that instance·precisely what we have found lacking in this one; that is, the by-laws there provided that the stock could only be 'transferred by the entry thereof upon the books of the bank, and Orndorff was held not to have been relieved from

7 S.W.(2d)—43

liability because he had failed to comply with the rules of the corporation as so prescribed.

The reason given for holding the stockholder of record liable in that class of cases—that is, that provisions requiring the transfer to be made only upon the books of the corporation are for the purpose of enabling creditors to determine therefrom who are the stockholders, and consequently estop one who permits his name to appear as such from denying to them that he occupied that relation—does not exist in this case, because no such provision appeared; the rule therefore fails with the absence of the reason for it. Plainly, if there was no requirement of that nature affecting a transfer of this stock, the creditors of this bank on the one hand, by assuming that there was, had no right to deal with it on the basis of Seidel's being a stockholder after his actual sale of his interest, nor upon the other, and for the same reason, was he estopped from denying that he then in fact occupied that relation.

Neither do we think the construction placed by the United States courts upon the federal statute on this same subject should be regarded as controlling, although our own act may have "borrowed its language almost verbatim" therefrom, as the opinion in the Orndorff Case recites, because, unlike the act of Congress, our enactment simply followed and made effective a specific constitutional provision defining and governing the. liability of stockholders in Texas State Banks.

[3] Recurring to the first proposition: It was neither alleged, nor shown, nor found that the bank was insolvent or even owed any debts on the date Seidel was so found to have made a bona fide transfer of his stock to Wright, but the cause was grounded solely on debts found to have existed on May 17, 1926, and he was held liable for these as a stockholder who had transferred his stock within twelve months of that date. Our constitutional provision referred to (Constitution, art. 16, § 16), as interpreted by our courts (Chapman v. Sparks [Tex. Civ. App.] 283 S. W. 338; Pool v. Chapman [Tex. Com. App.] 283 S. W. 762), expressly predicates the stockholder's liability solely upon debts existing at the date of such transfer of his stock, not upon those existing at the time the bank is declared insolvent. It is true that the statute enacted for the purpose of making this provision effective (R. S. art. 535) undertakes to· add thereto debts existing at the date of the bank's default, but this would appear to be unauthorized.

The rule on this question, as well as the reason for it, is, in principle, thus stated by the Commission of Appeals in the Pool Case, supra:

"But there certainly must be proof that debts in excess of the assets existed in the judgment of the commissioner when the former stock-

holder sold his stock before he can be held liable. * * *

"This is a statutory liability against Pool. Beginning with the early case of State v. Williams, 8 Texas 265, our Supreme Court has always held that one trying to enforce such a liability must plead his case with a great degree of certainty. In fact, it is held that the certainty must be of .the same degree as would be required in a bill of indictment. Of course, there must be some proof to sustain the necessary pleading.

"We are unwilling to go any further than the court did in the case of Austin v. Campbell [(Tex. Civ. App.) 210 S. W. 277] supra. Under ,the holding in that case, there must be proof that debts existed at the date of the transfer of the stock. That is the exact language of the constitutional provision. The lawmakers of Texas evidently did not intend that a stockholder, realizing his bank was already insolvent, should relieve himself of the liability attaching to his stock by selling out shortly before the crash finally comes. But it. is equally certain that it was not the intention of the lawmakers to require a stockholder, who sells his stock while the bank is solvent, to pay an assessment on the stock he once owned just because the bank became insolvent after he had disposed of his stock. It is only where the insolvency of the bank relates back to the time when the former stockholder owned his stock that there can be any liability. There could certainly be no presumption of insolvency at the date of the transfer of stock when it is not even shown that any debts existed at that time in excess of its assets."

These conclusions require a reversal. In view of it, it seems scarcely necessary to pass upon the question appellant raises concerning his claim for a judgment over against appellee Wright; he was not entitled to that relief upon the case as made, because, by his pleadings, he limited his right in that respect to an express agreement upon Wright's part to pay the assessment involved, but failed to prove it. We do not determine whether or not, under different circumstances, he might have been entitled to such a judgment, but incline to the view that he might have.

Reversed and remanded.