AUSTIN, Com'r of Insurance and Banking, v. CAMPBELL et al. (No. 2042.)

(Court of Civil Appeals of Texas. Texarkana. Feb. 28, 1919. On Motion for Rehearing, March 21, 1919.)

1. BANKS AND BANKING ⬥48(1)—INSOLVENT BANK—LIABILITY OF STOCKHOLDERS—STATUTE—"EACH STOCKHOLDER OF SUCH CORPORATION."

Rev. St. 1911, art. 552, does not extend the liability of a former stockholder of an insolvent banking corporation beyond the limits fixed by Const. art. 16, § 16; the words "each stockholder of such corporation," occurring in the article of the statute, meaning stockholders owning and holding shares at time of default.

2. CONSTITUTIONAL LAW ⬥34 — CONSTITUTION—SELF-EXECUTING PROVISION.

Const. art. 16, § 16, defining liability incident to ownership of stock in banking corporations, is self-executing.

3. BANKS AND BANKING ⬥48(1)—INSOLVENT STATE BANK—LIABILITY OF FORMER STOCKHOLDER.

Under Const. art. 16, § 16, and Rev. St. 1911, art. 552, the liability of a stockholder, who transferred his stock within less than one year prior to date on which bank made default in payment of its debt, was not secondary but the same, as to debts existing at the time of transfer, as that of present stockholders.

4. BANKS AND BANKING ⬥47(2) — SUIT AGAINST STOCKHOLDER—CONDITION PRECEDENT.

Where the commissioner of insurance and banking, after having determined that it was necessary in order to settle debts of insolvent state bank to levy a 100 per cent. assessment against the stockholders, sent notice thereof to defendant, who had transferred his stock less than a year prior to date of bank's default, with demand for payment, no further proceedings were necessary as a condition precedent to suit.

5. BANKS AND BANKING ⬥49(7)—INSOLVENT STATE BANK—SUIT AGAINST FORMER STOCKHOLDER—PLEADING.

In suit by commissioner of insurance and banking to enforce liability of present and former stockholder of an insolvent state bank, held, that pleadings filed were sufficient to authorize judgment against the former stockholder for full amount sued for.

⬥For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

On Motion for Rehearing.

**6. BANKS AND BANKING** ⬤⟹48(1)—**INSOLVENT BANK—AUTHORITY OF COMMISSIONER—STATUTE.**

Rev. St. 1911, art. 459, when construed with articles, 453, 456–458, is broad enough to confer on the commissioner of insurance and banking authority to enforce the liability of a former stockholder who has transferred his stock less than one year before date on which bank made default in payment of debts.

**7. BANKS AND BANKING** ⬤⟹48(1)—**ENFORCEMENT OF LIABILITY OF FORMER STOCKHOLDER—PROCEDURE.**

That the commissioner of insurance and banking proceeded against defendant, who had transferred his stock less than one year before default of bank, in the same manner that he proceeded against the then holder of the stock, *held* not to deprive defendant of any valid defense.

Appeal from District Court, Gregg County; Daniel Walker, Judge.

Suit by C. O. Austin, Commissioner of Insurance and Banking, against T. D. Campbell and another. From that part of the judgment denying relief against defendant named, plaintiff appeals. Judgment in favor of named defendant set aside, and judgment rendered for plaintiff.

F. H. Prendergast, of Marshall, and Edwin Lacy, of Longview, for appellant.

Marsh & McIlwaine, of Tyler, and F. J. McCord and Young & Stinchcomb, all of Longview, for appellees.

HODGES, J. On June 29, 1917, C. O. Austin, commissioner of insurance and banking, filed this suit against G. A. Bodenheim, as a stockholder of the People's State Bank of Longview, and T. D. Campbell, as a former stockholder of the same institution. The purpose of the suit was to enforce the liability of Bodenheim and Campbell for the unpaid debts of the People's State Bank, whose affairs had been taken over by the commissioner of insurance and banking as provided by law in case of insolvency. In a trial before the court a judgment was rendered in favor of the commissioner against Bodenheim for the full amount sued for, but denying relief against Campbell upon grounds that will be hereinafter stated. The appeal is from that portion of the judgment in favor of Campbell.

The following are, in substance, the findings of fact filed by the trial judge and which appear to be the only record of what was proven in the court below: The People's State Bank of Longview was a banking corporation incorporated under the laws of Texas, and prior to the dates hereinafter mentioned was doing a general banking business. Its capital stock amounted to $60,000,

divided into 600 shares of the par value of $100 each. On August 18, 1916, the bank became insolvent and was placed in the hands of the commissioner of insurance and banking in accordance with the provisions of the statute. On December 20, 1915, Campbell owned shares of stock in the bank of the face value of $6,000. On that date he sold and transferred his stock to Bodenheim, who continued to own and hold it till the bank was placed in the hands of the commissioner on August 18, 1916. At the time of the transfer from Campbell to Bodenheim, the bank owed debts to the amount of $12,000, which remained unpaid when its affairs were taken over by the commissioner on the date above mentioned. On October 17, 1916, the commissioner levied an assessment against the stockholders of the insolvent bank and sent out to each of them the following notice:

"Department of Insurance and Banking, State ·of Texas, Austin.

"October 17th, 1916.

"Notice to Stockholders of the People's State Bank of Longview, of Record on August 18th, 1916, and to Stockholders Who Transferred Their Stock within Twelve Months Previous to August 18th, 1916.

"Article 552, Revised Statutes, State of Texas (section 186, State Banking Law, Digest of 1913), provides as follows:

" 'If default shall be made in the payment of any debt or liability contracted by any bank, trust company, surety and guaranty company, or savings bank, each stockholder of such corporation, as long as he owns shares therein, and for twelve months after the date of a transfer thereof, shall be personally liable for all debts of such corporation existing at the date of such transfer, or at the date of such default, to an amount additional to the par value of such shares so owned and transferred.'

"You are further advised that article 459, Revised Statutes, State of Texas, read as follows:

" 'The commissioner may, if necessary, to pay the debts of such state bank, enforce the individual liability of the stockholders.'

"The general rule is that the stockholders' liability continues up to the time of the transfer on the books of the corporation and a transfer of stock *is not released from statutory liability* until one year after the transfer is entered on the books of the corporation. The stockholders of the above bank will note, by reading article 552, Revised Statutes, quoted above, that their liability for an amount equal to the stock owned begins to run immediately when default has been made by the bank in the payment of any debt or liability contracted by it.

"The stockholders are further advised that on August 18, 1916, the People's State Bank of Longview was found unable to meet its debts and liabilities, and therefore, acting under the authority vested in me by law, notice is hereby given that a 100 per cent. assessment is levied upon the stockholders of the above bank, and the stockholders are instructed to send to Jno.

---

⬤⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

L. Douglas, special agent, Longview, Texas, the amount of the assessment thus levied.

"Respectfully,          Chas. O. Austin,
"Commissioner of Insurance and Banking of the State of Texas."

In addition to the general conclusion that Campbell was not liable, the court, at the request of the parties, stated his reasons for so holding, which are as follows: (1) That the notice sent out by the commissioner to the stockholders was not sufficient as an assessment against Campbell as a former stockholder; (2) there being no evidence that Bodenheim was insolvent, either on the 20th of December, 1915, or the 18th of August, 1916, or on the date when this suit was instituted, or at the time of the trial, and there being no evidence that the commissioner cannot recover from him the full amount sued for with interest, the plaintiff was not entitled to recover from Campbell, even though the assessment made by the commissioner might otherwise be binding upon him; (3) there being no evidence that the commissioner, by exhausting the 100 per cent. liability against the stockholders of the bank as it existed on August 18, 1916, cannot realize an amount sufficient to satisfy the claims against the bank existing on the 20th of December, 1915, the plaintiff could not recover from Campbell, even though the assessment and notice were sufficient. These are the reasons assigned by the honorable trial judge for holding that Campbell, a former stockholder, was not liable in a proceeding where both the pleadings and the evidence were considered sufficient to justify a judgment against Bodenheim, a present stockholder. In this appeal the attack is made only upon the conclusions of law announced by the court.

The question before us is: Were the pleadings and the facts sufficient to require a judgment against Campbell, who had transferred his stock within less than one year prior to the date on which the bank made default in the payment of its debts? Section 16 of article 16 of the Constitution contains this provision:

"The Legislature shall, by general laws, authorize the incorporation of corporate bodies with banking and discounting privileges, and shall provide for a system of state supervision, regulation and control of such bodies which will adequately protect and secure the depositors and creditors thereof. Each shareholder of such corporate body incorporated in this state, so long as he owns shares therein, and for twelve months after the date of any bona fide transfer thereof, shall be personally liable for all debts of such corporate body existing at the date of such transfer, to an amount additional to the par value of such shares so owned or transferred, equal to the par value of such shares so owned or transferred."

[1-3] The statute, which seems to be a substantial repetition of the foregoing, will be found quoted in the findings of the court.

While it is worded differently, it does, not, in our opinion, extend the liability of former stockholders beyond the limits fixed in the Constitution. The phrase, "each stockholder of such corporation," which occurs in the first sentence of the article of the statute, should be construed to mean stock holders owning and holding shares at the time the default is made. When thus construed, there is no material difference between the language of the statute and that of the Constitution; but even if it were otherwise, we think that provision of the Constitution which defines the liability incident to the ownership of shares of stock in banking corporations is self-executing and sufficiently broad to cover this case. The terms of the constitutional provision are very specific:

"Each shareholder, so long as he owns shares, and for twelve months after" he transfers them, "shall be personally liable for all the debts of such corporate body existing at the date of such transfer to an amount," etc.

Section 5151 of the federal statute (Rev. St.), which deals with the liability of stockholders in national banks, is worded somewhat differently. It provides that the shareholders of national banking associations shall be held "individually responsible, equally and ratably, and not one for another, for all contracts, debts," etc. At the time our constitutional amendment was formulated, its authors must have been familiar with this federal statute, which had been in force since 1864; and the failure to employ terms of similar import in framing the amendment is too significant to be overlooked. The variance from the language of the federal law was evidently the result of a design to fortify the protection of the depositors and creditors of state banks by enlarging beyond the limits of the federal statute the individual liability of each shareholder in those banks. They not only made each shareholder liable to the extent of the par value of his stock, but extended that liability for one year from the date of any bona fide transfer for all debts existing upon that date. As to debts then existing, a former stockholder is subject to the same liability as that of a present stockholder.

[4] The next question is: How shall the liability of shareholders be enforced? No formal method has been provided by our statute. Article 459, which is the only provision in any way bearing upon that subject, merely says:

"The commissioner may, if necessary to pay the debts of such state bank, enforce the individual liability of the stockholders."

It would be an unwarranted limitation of the meaning of this article to, say that it does not authorize the commissioner to collect from all whose liability depends upon owning, or having owned, shares of stock

in the banking corporation—former shareholders as well as present shareholders. By the banking law the commissioner is made the liquidating agent whose duty it is to collect and assemble for distribution among the creditors of an insolvent bank all the funds available for the payment of its debts. During his administration of the bank's affairs is both the time and the occasion for the exercise of that authority. It devolves upon him to determine when it is necessary to enforce the individual liability of the shareholders and how much each shall pay. A similar authority conferred upon the United States Comptroller of the Currency is considered as a quasi judicial function, and his decision is treated with the same sanctity usually accorded to judicial decrees. Collier v. Smith, 169 S. W. 1108, and cases cited. When the commissioner has determined that it is necessary, to settle the bank's debts, that the stockholders shall pay all or a part of that for which they are made liable, and fixes the amount each shall contribute, the debt of each shareholder becomes due and payable. Notice of the amount thus assessed and demanded of him is all that any shareholder may claim as a condition precedent to the filing of a suit against him to compel payment. The notice, however, is not a jurisdictional prerequisite to the filing of the suit by the commissioner where payment is not made; it is only for the purpose of enabling the shareholders to do without suit what he may be compelled to do by suit. Here, again, there is another distinction between our statute and the federal law which authorizes the comptroller to enforce the individual liability of shareholders of national banks. When a national bank becomes insolvent, the comptroller appoints a receiver to take charge of its affairs, and the suit to enforce the liability of the shareholders is instituted by the receiver under the direction of the comptroller and after the latter has determined that a collection from the shareholders is necessary. Under our statute the commissioner himself takes the steps necessary to enforce the liability of the shareholders. There being no such limitation in our statute as is found in the federal law, the proceedings required to adjust and fix the rateable liability of each shareholder are not essential. When the commissioner in this state sues a stockholder, or a former stockholder, and alleges that it is necessary to enforce the liability of the shareholders in order to pay the debts of the bank, who can say that he has not found that it was necessary? What more can any shareholder demand as a condition to a suit than that he shall be given the opportunity to settle without suit the debt which he may be compelled to pay? When the commissioner sent to Campbell the notice copied in the court's findings of fact, Campbell was inform-

ed that the commissioner had judicially determined that it was necessary to call upon former stockholders, as well as present stockholders, for sums equal to the par value of their stock, in order to pay the debts of the bank. That notice furnished Campbell the opportunity to pay the sum for which he was liable, without a suit. It was not necessary for the commissioner, in order to fix the liability of the shareholders, or of the former shareholders, and render them subject to a suit, to adopt a method of assessment more formal than that followed in this instance. Whatever conclusiveness attached to his findings as to the existing shareholders would logically apply in proceedings against the former shareholders. The reasons for the rule are no less cogent in one case than in the other. If a present stockholder is compelled to pay more than is needed in settling the debts of the bank, he is entitled, at the close of the administration, to a return of the surplus; and the same avenue of relief is open to a former stockholder. If either is compelled to pay a sum larger than his proportional part by reason of the default of others equally liable, he has his remedy for contribution; but such relief is no part of this proceeding.

[5] In the pleadings filed in this suit it was alleged that there existed, at the time Campbell transferred his stock, debts of the bank largely in excess of the par value of Campbell's interest which remained unpaid. It was further alleged that it was necessary to enforce the liability of the stockholders in order to pay those debts, and that the commissioner had so determined. Those averments were sufficient, without pleading in detail what debts the bank owed, to authorize a judgment against Campbell for the full amount sued for. We therefore conclude that the court erred in not so holding.

The judgment in favor of Campbell will be set aside, and a judgment here rendered in favor of the commissioner for the full amount sued for, together with interest at the rate of 6 per cent. per annum from date of the notice sent out by the commissioner, and all costs both of this court and of the court below. The judgment against Bodenheim, not being appealed from, is undisturbed.

### On Motion for Rehearing.

[6] It is insisted that we erred in holding that article 459 of the Revised Civil Statutes confers upon the commissioner of insurance and banking authority to enforce the liability of a stockholder who had transferred his shares of stock prior to the date the bank was closed because of insolvency. It is argued with much force that the article of the statute referred to is, by its terms, confined to shareholders who had not transferred their shares of stock. It is also contended

that while the liability of a former stockholder continues it becomes, after assignment, secondary to that of the existing stockholders, and can be enforced only in an equitable proceeding in the nature of a creditor's bill. It is true that article 459 uses the language, "the stockholders," in authorizing proceedings by the commissioner, and a literal interpretation would support the proposition asserted by counsel for the appellee. But the question is: Would not that interpretation defeat, in part at least, the manifest purpose of the Legislature in the enactment of this banking law? In the case of Studebaker v. Perry, 184 U. S. 258, 22 Sup. Ct. 463, 46 L. Ed. 528, the Supreme Court, in construing the federal statute relating to the double liability of shareholders in national banks, uses this language:

"Such may be the true construction of the statute; but, defeating, as it would in the case supposed, the main and obvious purpose of the enactment, such a construction will only be made by a court when compelled by the necessary meaning of the language."

In determining the full scope of the legislative purpose, the following provisions of the banking act should be considered:

"Art. 453. Whenever any state bank or trust company shall become insolvent and shall voluntarily, or by law, or in any manner as provided in this title, come into the hands of the commissioner of insurance and banking, he may proceed to wind up its affairs, either through a receiver or through some competent person, who shall give bond as may be required by the board, payable to the board, for the faithful performance of all duties imposed upon him. * * *

"Art. 456. Upon taking possession of the property and business of such state bank, the commissioner is authorized to collect moneys due to such corporation, and do such other acts as are necessary to conserve its assets and business, and shall proceed to liquidate the affairs thereof as provided in this chapter.

"Art. 457. The commissioner shall collect all debts due and claims belonging to such state bank.

"Art. 458. Upon the order of the district court, if in session, or the judge thereof, if in vacation, of the county of which such state bank was located and transacting business, the commissioner may sell or compound all bad or doubtful debts, and, on like order, may sell the real or personal property of such state bank, on such terms as the court shall direct.

"Art. 459. The commissioner may, if necessary to pay the debts of such state bank, enforce the individual liability of the stockholders."

An examination of the foregoing makes it plain that the Legislature intended to confer upon the banking commissioner authority to fully administer the affairs of insolvent state banks, and for that purpose empowered him to collect from all sources the funds that might be used in payment of the claims of the creditors. If the commissioner had no authority to enforce the liability of

former stockholders, his administration might in many instances be only partial; in fact, there might arise cases in which the greater part of the funds available for the payment of the claims of creditors must come from parties who had previously assigned their stock. Unless there is some good reason for withholding from the commissioner the power to enforce the liability of former stockholders, no such construction should be placed upon the statute, since to do so would expose the creditors of insolvent banks to the very hazards and delays which the law seeks to obviate. The same considerations of business policy which justify the remedy prescribed for enforcing the liability of present stockholders apply with equal force to that of former stockholders.

The contention that when a stockholder transfers his shares of stock his liability becomes secondary to that of the remaining shareholders is not sound. Whatever may be the order of liability as between the parties to an assignment of shares of stock, the attitude of the assignor toward the creditors who were such at the date of the assignment continues unchanged during the term of one year. The liability of both parties to the transaction is imposed by law and does not arise from contractual obligations.

[7] As another reason for denying the right of the commissioner to proceed against former stockholders in the same manner he may pursue in enforcing the liability of existing stockholders, it is urged that it would unjustly deprive the former of valid defenses. This is based upon the argument that while present stockholders are liable, to the extent of the par value of their respective shares of stock, for all the debts of the insolvent bank, the liability of former stockholders is for only a part of that indebtedness. That may or may not be true, depending upon the facts of each particular case. Situations may easily arise in which there is no practical difference: As when all of the debts are contracted before the assignment of the stock had been made. In such cases it is not easy to find a satisfactory reason for any discrimination between present and former stockholder in the enforcement of their several liabilities. Nor does it appear that there should be any even where the situation is different. As has been stated, the only difference between the attitude of a former stockholder and that of an existing stockholder toward the creditors of the bank is that one class is liable for all debts, and the other may be liable for only a part.

There is no more injustice in permitting the commissioner to determine that debts exist for which a former stockholder is liable and which render it necessary to enforce his liability than for authorizing him to exercise a similar function as a condition for

proceeding against a present stockholder. The only fact which a former stockholder may plead which is not equally available to an existing stockholder is that the unpaid debts of the bank did not exist when he assigned his stock. In ordinary proceedings in a court of equity both classes of stockholders might question the existence of any debts, or the necessity for enforcing their liability. It is no more inequitable to deprive one of that defense than to take it from the other.

This particular proceeding originated in the district court, and all the defenses which the appellee claims he might have pleaded in a court of equity were set up in his answer. It appears that the court heard evidence upon the issues raised, and found as a fact that the bank owed debts in excess of the sum sued for which existed on the date the appellee assigned his stock to his codefendant, Bodenheim. That being true, the appellee has been deprived of no valid defense.

We are of the opinion that our original construction of the statute as to the powers of the commissioner is correct, and the motion for rehearing is overruled.

