### HARRIS v. BRIGGS, State Com'r of Insurance and Banking.

(Circuit Court of Appeals, Eighth Circuit.   April 8, 1920.)

No. 5480.

1. **Banks and banking** �köö84—**Transfer of property to another bank assuming indebtedness not creation of debt prohibited by statute.**

   The transfer by a bank of all of its property and assets as security to another bank, which assumed its liabilities to creditors, did not create a new debt in violation of Vernon's Ann. Code Cr. Proc. Tex. 1916, art. 532, and Vernon's Sayles' Ann. Civ. St. 1914, art. 554, making it a criminal offense for an officer of a bank to create debts with knowledge that the bank is insolvent.

2. **Banks and banking** �köö78—**Transfer of property to secure bank assuming indebtedness not voluntary assignment.**

   The transfer, by a bank unable to meet its obligations, of all of its property and assets as security to another bank, which assumed its indebtedness, was not a voluntary general assignment of the business and affairs of the bank, in violation of Vernon's Sayles' Ann. Civ. St. Tex. 1914, art. 551.

3. **Contracts** �köö108(2)—**Failure of banking commissioner to take charge of bank transferring assets does not invalidate contract to liquidate assets.**

   Where the F. Bank, being unable to meet its obligations, transferred all of its assets to the C. Bank, which assumed the indebtedness of the F. Bank, if it thereupon became the duty of the commissioner of insurance and banking to take possession of such assets, under Vernon's Sayles' Ann. Civ. St. Tex. 1914, art. 551, relating to banks in a failing condition, his failure to do so did not render null and void, as contrary to public policy, such contract, which required the F. Bank to repay any amount not realized by the C. Bank from such assets.

4. **Banks and banking** ⊦köö86—**Transfer of assets to secure bank assuming indebtedness not ultra vires.**

   A transaction between the F. Bank and the C. Bank, whereby the F. Bank which was unable to meet its obligations transferred its assets to the C. Bank as security, and the C. Bank assumed the indebtedness of the F. Bank, and the F. Bank agreed to pay any deficiency, was not ultra vires.

5. **Banks and banking** ⊦köö47(1)—**Stockholders' liability extends to money borrowed to pay ordinary debts.**

   Under Vernon's Sayles' Ann. Civ. St. Tex. 1914, art. 552, making stockholders liable for debts to an amount equal to the par value of their stock, construed as applying only to debts contracted by the bank in the ordinary course of business, an indebtedness for money borrowed to pay debts so contracted is contracted in the ordinary course of business, and the stockholders are liable.

6. **Banks and banking** ⊦köö63½—**Necessity of enforcing stockholders' liability is question for commissioner.**

   Under Vernon's Sayles' Ann. Civ. St. Tex. 1914, art. 453, authorizing the commissioner of banks to wind up the affairs of insolvent banks, and article 459, authorizing him, if necessary, to enforce the liability of stockholders, the questions whether it is necessary to enforce such liabili-

---

⊦köö For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.

ty, and, if so, to what extent, are referred to his judgment and discretion, and his decision is conclusive.

**7. Banks and banking ⬤⟳49(5)—Authority of commissioner of banking to enforce stockholders' liability not lost by delay.**

Where a bank, being unable to meet its obligations, transferred its assets to another, which assumed its liability to creditors, the delay of the commissioner of banking for nearly four years in appointing a special agent to take charge of the bank, and in making an assessment against stockholders, did not affect his right or authority to act under Vernon's Sayles' Ann. Civ. St. Tex. 1914, arts. 453, 459.

**8. Banks and banking ⬤⟳47(1)—Liability of stockholders and power of commissioner not dependent on existence of assets.**

The liability of stockholders of a bank, under Vernon's Sayles' Ann. Civ. St. Tex. 1914, art. 552, and the power of the commissioner of banking to enforce it under article 459, do not depend on whether the bank has assets, or whether the special agent appointed to act for the commissioner is able to take possession of them.

**9. Limitation of actions ⬤⟳58(5)—Cause of action on assessment against bank stockholders does not accrue until assessment.**

Where a bank transferred its assets to another bank, which assumed its liabilities, agreeing to pay any deficiency not realized from the assets, and almost four years later the commissioner of banking took charge of the first bank and made an assessment against the stockholders for the purpose of paying a deficiency due the second bank, the cause of action in favor of the commissioner against the stockholders did not accrue until the date of the assessment, and limitations did not run.

In Error to the District Court of the United States for the Western District of Missouri; Arba S. Van Valkenburgh, Judge.

Action by George Waverly Briggs, Commissioner of Insurance and Banking of the State of Texas, against Overton Harris. Judgment for plaintiff, and defendant brings error. Affirmed.

Frank P. Sebree and John Kennish, both of Kansas City, Mo. (Sam B. Sebree, of Kansas City, Mo., on the brief), for plaintiff in error.

Ed J. Hamner, of Sweetwater, Tex. (I. P. Ryland and R. E. Ball, both of Kansas City, Mo., on the brief), for defendant in error.

Before HOOK and CARLAND, Circuit Judges.

CARLAND, Circuit Judge. This action was brought by the commissioner of insurance and banking of the state of Texas, hereafter called plaintiff, against Overton Harris, hereafter called defendant, to recover an amount equal to the par value of the shares of stock owned by said defendant in the Farmers' & Merchants' State Bank & Trust Company of Sweetwater, Tex., hereafter called Farmers' Bank, for the benefit of the creditors of said bank. At the trial of the action, counsel on each side at the close of all the evidence, without more, requested a directed verdict. The request of counsel for plaintiff was granted; that of the defendant, denied. The defendant brings the case here, assigning the above ruling of the court as error. The record presents but one question: Is there substantial evidence to sustain the verdict? Lehnen v. Dickson, 148 U. S. 71, 13 Sup. Ct. 481, 37 L. Ed. 373; Runkle v. Burnham, 153 U. S. 216, 14 Sup. Ct. 837, 38 L. Ed. 694; Buetell v. Magone, 157 U. S. 155, 15 Sup. Ct. 566, 39

L. Ed. 654; La Crosse Plow Co. v. Pagenstecher, 253 Fed. 46, 165 C. C. A. 644.

The material facts as shown by the record are substantially as follows:

On November 17, 1913, the Farmers' Bank of Sweetwater, Tex., found itself unable to continue business because its assets were non-liquid and uncollectible. It could not meet its obligations, and was in fact insolvent. Pursuant to a call made by letters written to all the stockholders by the president and cashier thereof, and notices issued by the commissioner of banking to the various stockholders, one of which was received by defendant, there was held at the office of the bank, on the above-mentioned date, a meeting of its stockholders. At this meeting there were present and voting eight of the stockholders, representing 122⅔ shares of stock. There were represented by proxy 370⅔ shares of stock, leaving but 6⅔ shares of stock not represented, of the total capital stock of the bank. Of the total capital stock of 500 shares issued by the bank, 493⅓ shares voted to authorize the directors to make the contract hereafter mentioned. The defendant received notice of the meeting and of the intention of making the contract. He took no action to prevent the contract being made, and made no protest against the making of the same. No point is made, however, that the officers who signed the contract were without authority so to do, so far as authority from the stockholders and directors is concerned. The contract was made by the Farmers' Bank with the knowledge and consent of the commissioner of banking of the state of Texas, whose agent Mr. Roberts was in Sweetwater on the date in question, and the evidence shows that it was at the solicitation of the commissioner of banking that the contract was made. The contract itself is too lengthy to be set forth in this opinion. It is sufficient to say that it was executed on the date above mentioned by the Continental State Bank of Sweetwater, Tex., hereafter Continental Bank, as party of the first part, and the Farmers' Bank, as party of the second part.

By the terms of the contract the Farmers' Bank sold, transferred, and conveyed all of its property, real and personal, of every kind and character, to the Continental Bank. In consideration whereof the Continental Bank assumed all the indebtedness of the Farmers' Bank and agreed to become liable therefor to its respective creditors; the amount of the indebtedness and the property conveyed being listed and attached to the contract as exhibits. The Farmers' Bank acknowledged itself indebted to the Continental Bank for the amount of the indebtedness assumed by the latter, to wit, the sum of $130,864.80. The contract provided that the sale and delivery of the assets of the Farmers' Bank to the Continental Bank was made for the purpose of securing the latter for the assumption and payment of the indebtedness of the former. The contract further provided that, whenever the Continental Bank should have collected and received a sufficient amount of money out of the assets assigned, pledged, and transferred to it by the Farmers' Bank to pay the indebtedness of the latter to the former, then the Continental Bank was to deliver to the Farmers'

Bank all the uncollected assets. It further provided that if, at the expiration of two years from the date of the execution of the contract, the Continental Bank had not collected and realized from the net assets of the Farmers' Bank a sufficient amount of money to pay the indebtedness due it as provided in the contract, together with interest, then the Continental Bank should deliver to the Farmers' Bank all of the uncollected and undisposed-of assets, and thereupon the Continental Bank should be entitled to demand of the Farmers' Bank the payment in cash of all unpaid amounts due it on account of the indebtedness due from the Farmers' Bank to the Continental Bank, and the Farmers' Bank promised to pay said unpaid balance, together with interest, to the Continental Bank. To secure the faithful performance of this contract the Farmers' Bank executed, with sureties, its bond and obligation. The amount of $130,865.80 was used in paying off and discharging all the indebtedness of the Farmers' Bank as shown on its books on November 17, 1913. The contract was duly performed by the Continental Bank, and on March 1, 1916, it brought suit against the Farmers' Bank and its sureties on the obligation above referred to, and recovered a judgment for $76,227.38, which had been reduced by collections and the sale of property at the time of the trial of the present action to $23,000, which sum does not include interest or commissions covered by the contract. On November 17, 1913, the defendant was and still is the owner of 33⅓ shares of the capital stock of the Farmers' Bank. On July 16, 1917, Charles O. Austin, as commissioner of insurance and banking of the state of Texas, appointed N. B. Bowie, an officer of the Continental Bank, as special agent of the department of insurance and banking by an appointment reading as follows:

"Department of Insurance and Banking, State of Texas, Austin.

"The State of Texas, County of Travis:

"I, Charles O. Austin, commissioner of insurance and banking of the state of Texas, having taken possession of the affairs of the Farmers' & Merchants' State Bank & Trust Company, of Sweetwater, Texas, as provided by law, in conformity with the authority vested in me by law, have this day appointed N. B. Bowie, of Nolan county, Texas, as special agent of the department of insurance and banking, to represent me in all matters pertaining to the liquidation of said Farmers' & Merchants' State Bank & Trust Company of Sweetwater, Texas, and it is hereby made his duty to collect debts due and claims belonging to said bank, and to safely keep all money, notes, accounts, evidence of indebtedness, and other assets of said bank, its books and papers, and duly account to me for same, and to perform such other acts as the commissioner of insurance and banking may direct.

"In testimony whereof, I have hereunto signed my name and affixed my official seal at Austin, Texas, on this the 16th day of July, A. D. 1917.

"Chas. O. Austin,
"Commissioner of Insurance and Banking of the State of Texas."

On the same date said commissioner gave the stockholders of the Farmers' Bank notice of an assessment levied by him of 100 per cent. on the amount of the capital stock owned by them in said bank on November 17, 1913. Said notice and levy was in the following language:

"[Seal of Department of Insurance and Banking.]
"Department of Insurance and Banking, State of Texas.

"Austin, July 16, 1917.

"Notice to stockholders of the Farmers' & Merchants' State Bank & Trust Company of Sweetwater, of record on November 17, 1913, and to stockholders who transferred their stock within twelve months previous to November 17, 1913. * * * The stockholders are further advised that on November 17, 1913, the Farmers' & Merchants' State Bank & Trust Company of Sweetwater, was found unable to meet its debts and liabilities, and therefore, acting under the authority vested in me by law, notice is hereby given that a 100 per cent. assessment is levied upon the stockholders of the above bank, and the stockholders are instructed to send the Continental State Bank of Sweetwater the amount of the assessment levied.

"Respectfully,　　　　　　　　　Chas. O. Austin,
"Commissioner of Insurance and Banking of the State of Texas."

We do not stop to consider the claim of the plaintiff that, in order to recover, it was only necessary for him to show that the bank was insolvent, that it was taken in charge by the commissioner of banking, and that said commissioner levied the assessment sought to be recovered. Kennedy v. Gibson, 75 U. S. (8 Wall.) 505, 19 L. Ed. 476; Casey, Rc'r. v. Galli, 94 U. S. 680, 681, 24 L. Ed. 168; Bank v. Case, 99 U. S. 633, 25 L. Ed. 448; Bushnell v. Leland, 164 U. S. 684, 17 Sup. Ct. 209, 41 L. Ed. 598; Collier, Com'r, v. Smith (Tex. Civ. App.) 169 S. W. 1111; Morgan v. Davenport, 60 Tex. 230; McWhirter v. First State Bank (Tex. Civ. App.) 182 S. W. 684; Stringfellow v. Patterson, Com'r (Tex. Civ. App.) 192 S. W. 557; Brooks v. Austin, Com'r (Tex. Civ. App.) 206 S. W. 725; Austin v. Campbell (Tex. Civ. App.) 210 S. W. 278. The trial below proceeded on the theory that the validity of the debt due the Continental Bank was an open question. Richmond v. Irons, 121 U. S. 27, 7 Sup. Ct. 788, 30 L. Ed. 864; Schrader v. Manufacturers' Nat. Bank, 133 U. S. 67, 10 Sup. Ct. 238, 33 L. Ed. 564; Ward v. Joslin, 186 U. S. 142, 22 Sup. Ct. 807, 46 L. Ed. 1093; Assets Realization Co. v. Howard, 70 Misc. Rep. 651, 127 N. Y. Supp. 798.

[1-4] We therefore proceed in accordance with that theory. By the contract of November 17, 1913, the Continental Bank, in legal effect loaned the Farmers' Bank $130,864.80, and took as security for the repayment of the same the assets of the Farmers' Bank described in the contract. The money loaned was used in paying all the debts of the Farmers' Bank for which the defendant was liable to the extent of the par value of the stock owned by him if the assets of the bank should prove insufficient to pay the same. The sum of $23,000, now owing by the Farmers' Bank to the Continental Bank, is a portion of the money which was used to pay the debts of the Farmers' Bank for which defendant was liable as stated. It includes no interest or commissions covered by the contract. The Continental Bank having paid this sum of money in liquidation of the debts of the Farmers' Bank, why in equity and good conscience should it not receive payment for the money so expended. Not only equity and good conscience require the payment, but by the terms of the contract the Farmers' Bank promised to repay it, and gave its bond and obligation with

sureties, to secure the performance of the promise. If the Continental Bank may not recover the balance due it, it must be because some legal objection prevents it.

Counsel for defendant first urges that the contract in question is illegal and void, because against the public policy of the state of Texas. It is claimed that such public policy is shown by article 551, Civil Statutes of Texas. This section makes it unlawful for a bank, savings bank, or trust company to make a voluntary general assignment of its business and affairs, and provides that any such assignment shall be null and void. It also provides that, if any such institution shall find itself in a failing condition, it shall immediately place itself in the hands of the commissioner of insurance and banking; also that, if the officers or directors of any such institution shall endeavor to make any voluntary general assignment of its assets, said commissioner shall immediately take possession thereof and proceed as provided in the case of insolvent banks for the appointment of a receiver by court. Article 554, Civil Statutes, and article 532, Vernon's Criminal Statutes, 1916, of Texas, make it a criminal offense for any officer of a bank to create or assent to the creation of any debts by such bank after he shall have knowledge that the bank is insolvent and in failing circumstances. So far as the last-cited statutes are concerned it may be said that the transaction between the Farmers' Bank and the Continental Bank created no new debt. It simply changed a liability to several creditors to one creditor, the debt remaining the same.

Neither did the transaction constitute a voluntary general assignment of the business and affairs of the bank, nor can it be said that the officers or directors were endeavoring to make a voluntary general assignment of the assets of the bank. Even if it can be said that it was the duty of the commissioner of insurance and banking at the time the contract was made to have taken immediate possession of the assets of the bank and applied to the court for a receiver, the failure of the commissioner so to do did not render the contract null and void. So far as the officers were concerned they acted under the advice of the commissioner. It was certainly good public policy for the Farmers' Bank to pay its debts at the time the contract was made, and it is good public policy that it should pay its debt and perform its contract at the present time. We can see nothing in the whole transaction which had any tendency to be injurious to the public welfare of the state of Texas. The power of the courts to declare a contract void for being in contravention of sound public policy is a very delicate and undefined power, and should be exercised only in cases free from doubt. The validity of the contract in question is fully sustained, in our opinion, by the case of George et al. v. Wallace et al., 135 Fed. 286–295, 68 C. C. A. 40, affirmed by the Supreme Court of the United States in Wyman et al. v. Wallace et al., 201 U. S. 230–242, 26 Sup. Ct. 495, 50 L. Ed. 738, and Aldrich v. Chemical National Bank, 176 U. S. 617–619, 20 Sup. Ct. 498, 44 L. Ed. 611. The case of Board of Commissioners of Lake Co. et al. v. Citizens' Trust Bank et al. (Ind. App.) 123 N. E. 130, is not in point as the facts in the present case do not show that the officers or directors of the

Farmers' Bank were endeavoring to make a general assignment of its assets. It simply borrowed money and pledged all of its assets for the repayment of the same. For the reasons stated, we are of the opinion that the contract between the Farmers' Bank and the Continental Bank was not ultra vires or against the public policy of the state of Texas.

[5] It is next urged that the indebtedness of $23,000 still due the Continental Bank from the Farmers' Bank under the contract is not a debt or liability contracted by the Farmers' Bank in the ordinary course of business, and therefore is not a debt for which the defendant is liable. Article 552, Vernon's Sayles' Texas Civil Statutes 1914, provides:

"If default shall be made in the payment of any debt or liability contracted by any bank, trust company, * * * each stockholder of such corporation * * * shall be personally liable for all debts of such corporation, * * * to an amount additional to the par value of such shares so owned, * * * equal to the par value of such shares."

If, however, the statute be construed so as to limit the indebtedness for which the double liability is provided to debts contracted by the bank in the ordinary course of business (Schrader v. Manufacturers' National Bank, 133 U. S. 67, 10 Sup. Ct. 238, 33 L. Ed. 564; Ward v. Joslin, 186 U. S. 142, 22 Sup. Ct. 807, 46 L. Ed. 1093; Assets Realization Co. v. Howard, 70 Misc. Rep. 651, 127 N. Y. Supp. 798; McClaine v. Rankin, 197 U. S. 154, 25 Sup. Ct. 410, 49 L. Ed. 702, 3 Ann. Cas. 500; First National Bank v. Hawkins, 174 U. S. 364, 19 Sup. Ct. 739, 43 L. Ed. 1007), we are still of the opinion that under the facts of this case the debt is one for which the statute provides a liability on the part of the stockholders. The debts of the Farmers' Bank, which were paid by the Continental Bank, were, so far as the record shows, debts contracted in the ordinary course of business of the bank. The indebtedness for which it is sought to hold the defendant liable in this case was created by borrowing money to pay those debts. We are of the opinion that the borrowing of money by the Farmers' Bank to pay debts contracted in the ordinary course of business created a debt which may be truly said to have been contracted in the ordinary course of business. In Richmond v. Irons, 121 U. S. 27, 7 Sup. Ct. 788, 30 L. Ed. 864, the court, in deciding that the individual liability of stockholders must be restricted in its meaning to such contracts, debts, and engagements as have been duly contracted in the ordinary course of business, excepted those debts contracted under the implied authority of liquidation.

[6-9] It is next contended that the bank commissioner had no right to make an assessment against stockholders of the Farmers' Bank or maintain this suit against the defendant. Article 453, Vernon's Sayles' Texas Statutes 1914, provides that—

"Whenever any state bank * * * shall become insolvent and shall voluntarily, or by law, * * * come into the hands of the commissioner of insurance and banking, he may proceed to wind up its affairs," etc.

And article 459 reads:

"The commissioner may, if necessary to pay the debts of such state bank, enforce the individual liability of the stockholders."

We are of the opinion that under the Texas decisions (Brooks v. Austin, Com'r [Tex. Civ. App.] 206 S. W. 725, and Austin, Com'r, v. Campbell [Tex. Civ. App.] 210 S. W. 279), the questions whether it is necessary to enforce the personal liability of the stockholders of an insolvent bank, and, if so, to what extent, are referred to the commissioner's judgment and discretion, and his decision of them is conclusive. We do not think the fact that the commissioner did not appoint a special agent and make his assessment until nearly four years after the contract between the Farmers' Bank and the Continental Bank was made affects his right or authority to act in the premises. The bank as a corporation still exists. It was insolvent, and owed a debt which, so far as the record shows, could not be paid, except by enforcing the so-called double liability of the stockholders. It is true the special agent appointed never received any property of the Farmers' Bank, but that may happen in many cases. The double liability of the stockholders and the power of the commissioner to enforce the same does not depend upon whether the bank has assets, or whether the special agent appointed to act for the commissioner is able to take possession of them. So far as we are informed there is no law which restricted the right of the commissioner to make a stock liability assessment and bring suit to enforce the same at the time he did.

It is also urged that the two-year statute of limitations of the state of Texas applied to this suit. In order that the statute may apply, counsel for defendant claims that the debt accrued at the time the bank went out of existence on November 17, 1913. We cannot adopt this view. The present suit was commenced November 14, 1917. The assessment which is sought to be enforced was levied July 16, 1917. We are therefore of the opinion that the cause of action in favor of the commissioner did not accrue until the date of the assessment. Hawkins v. Glenn, 131 U. S. 319, 9 Sup. Ct. 739, 33 L. Ed. 184; Glenn v. Liggett, 135 U. S. 533, 10 Sup. Ct. 867, 34 L. Ed. 262; Glenn v. Marbury, 145 U. S. 499, 12 Sup. Ct. 914, 36 L. Ed. 790.

Upon the whole record we are satisfied that there was substantial evidence to sustain the verdict of the jury. The judgment below is therefore affirmed.