**KNOLLENBERG v. CHAPMAN, Commissioner of Insurance and Banking.\***
**(No. 1547.)**

(Court of Civil Appeals of Texas. El Paso.
Jan. 17, 1924. Rehearing Denied
Feb. 21, 1924.)

Banks and banking ⬤⟳15 — Commissioner of banking authorized to enforce individual liability of stockholders to reimburse guaranty fund.

In view of Const. art. 16, § 16, authorizing creation of depositors guaranty fund, and Rev. St. arts. 453, 456, 458, 459, 484, 486, and 552, providing for protection and security of depositors of banks, where a bank is insolvent, and the commissioner of banking and insurance has concluded it is necessary to enforce individual liability of stockholders to pay its debts, and in winding up banks affairs he has used the bank guaranty fund, he may enforce the individual liability of stockholders to reimburse the fund so used.

Appeal from District Court, El Paso County; P. R. Price, Judge.

Action by J. L. Chapman, Commissioner of Insurance and Banking, against F. C. Knollenberg. Judgment for plaintiff, and defendant appeals. Affirmed.

E. L. Medler and R. J. Channell, both of El Paso (Dyer & Morton, of El Paso, of counsel), for appellant.

Lea, McGrady, Thomason & Edwards, of El Paso, for appellee.

WALTHALL, J. J. L. Chapman, commissioner of insurance and banking of the state of Texas, brought this suit in the district court of El Paso county, against F. C. Knollenberg as the owner of 5 shares of the capital stock of the El Paso Bank & Trust Company, hereinafter referred to as the bank, a banking corporation organized and acting under the Texas bank deposit guaranty law, to recover on a 100 per cent. bank stock liability, the affairs of that bank having been taken over by the commissioner as provided by the Texas state laws in case of insolvency of the bank.

On the trial by the court sitting with a jury, judgment was rendered in favor of the commissioner for $500 and interest, the amount sued for. From that judgment Knollenberg prosecutes this appeal.

The following statement of the uncontroverted facts sufficiently reflects the issues tendered. in the pleadings and as disclosed by the evidence:

On March 7, 1922, and from and after the organization of the bank on March 29, 1910, Knollenberg owned 5 shares of $100 each of the capital stock of the El Paso Bank & Trust Company, a banking corporation, chartered under the Texas banking laws, with a capitalization increased from $100,000 to $200,000.

The commissioner, assisted by several bank examiners, both state and federal, made a personal investigation of the financial affairs and condition of the said bank on and prior to the 7th day of March, 1922, sufficient in detail to determine the question of the solvency of the bank. Based upon investigation made, the commissioner decided that the bank was insolvent; that the liabilities of the bank exceeded its assets by approximately $460,000; that it was necessary to furnish, out of the guaranty fund, approximately $130,000, in order to pay off the noninterest bearing and unsecured depositors of the bank; and that amount was furnished by the commissioner, out of the guaranty fund held by the state treasurer, and paid into the assets of the bank.

The commissioner took possession of the affairs of the bank at about 8 o'clock p. m. on March 7, 1922. After the examination into the affairs of the bank had been completed, the commissioner called the board of directors of the bank together, explained to them the condition of the bank, and informed them the bank was insolvent. The board of directors acknowledged the insolvency of the bank and passed a resolution to that effect. The president and board of directors thereupon turned over to the commissioner all the affairs of the bank, requesting the commissioner to liquidate and wind up its affairs, confirming that request by a resolution passed.

The commissioner, prior to a sale of the assets of the bank, secured the approval of the district court, as provided by our statute, to make the sale of the bank's assets, and the approval of the sale as made; the commissioner selling all the assets of the bank to the City National Bank of El Paso, save and except approximately $340,000, of charged off and unavailable securities, and except the stockholders liability and assessment of 100 per cent. which the commissioner retained to reimburse the guaranty fund for $130,000, placed by the commissioner in the assets of the bank, and constituted a credit entry on the books.

In order to consummate the sale of the assets of the bank to the City National Bank, there was charged out of the assets of the bank approximately $460,000 worth of charged off and uncollectable securities, so considered by the commission and board of directors of both the City National Bank and the El Paso Bank & Trust Company. To make the matter of items clearer than it might otherwise be without stating the evidence, the $460,000 was taken care of as follows: Approximately $210,000 taken care of by the capital stock and surplus of the bank, which was completely lost by the stockholders; $260,000 was charged out of the bills receivable and decrease in value of real estate; the

City National Bank assumed $130,000; the guaranty fund assumed the other $130,000, approximately. The City National Bank took over all the other assets of the bank, assumed all the liabilities of the bank, known and unknown, except the charged off securities and except the stockholders liability of 100 per cent. as stated, retained by the commissioner to reimburse the guaranty fund. By the terms of the sale the City National Bank was obligated to pay off the depositors and take over any other business of the bank. The commissioner concluded the necessity of the 100 per cent. assessment against the stockholders of the bank, for the reason that the guaranty fund is a creditor of the bank and is not taken care of by the contract of sale with the City National Bank, and the assets retained by the commissioner other than the 100 per cent. assessment of stockholders will not reimburse the guaranty fund for the $130,-000 placed in the assets of the bank, duly posted, and gave all notices required by law, including the notice posted on the front door of the bank as follows: "This institution is in the hands of the commissioner of insurance and banking of the state of Texas," and no question of want of any notice is presented. The notices given also include the notice of 100 per cent. assessment of stockholders of the bank. The bank was a state bank, operated under the Texas deposit guaranty law.

It is undisputed that up to the time the commissioner took over the affairs of the bank the bank had met all obligations presented to it, and had made no default in the payment or discharge on any debt or obligation presented to it, and that on the morning of the 8th day of March the business of the bank was resumed at the City National Bank, and that the City National Bank had met every obligation assumed by it under its contract of purchase of the assets of the bank, and was able to meet its assumed obligations with reference to the bank, and had made no default in its obligations up to the time of the levy by the commissioner of the assessment against appellant, and up to the time of the filing of this suit. The only purpose of the assessment of 100 per cent. against the stockholders of the bank was to reimburse the guaranty fund for moneys advanced by the commissioner to the City National Bank under the contract of March 7, 1922, so to do.

The contention of appellant, as indicated by his several propositions is substantially to the effect that the assessment by the commissioner on the stock owned by him was not authorized, because no debt of the bank was shown to exist on March 23, 1922; the bank's obligations had been promptly met up to the time of the transfer of its assets to the City National Bank, and the City National Bank had assumed all liability and had made no default in the payment of any of the bank's obligations; that the assessment was to re-imburse the guaranty fund for money paid out of that fund without authority of law, and not for any money paid to any depositor upon any claim proved up against the bank; that the transfer of the assets of the bank by the commissioner was an unwarranted exercise of power; that the disbursement of the guaranty fund, under the facts, was unauthorized; that there was no evidence that any guaranteed depositor of the bank had presented any claim entitling him to payment out of the guaranty fund, and no evidence that any part of the guaranty fund turned over to the City National Bank had been applied to the payment of any guaranteed depositor of the bank, but that same went into the general assets of the bank, and was commingled with the assets of the City National Bank.

The difference in the attitude of appellant and the commissioner seems to be that appellant insists that the liability of the owner of stock in a state bank is based on the wording of our statutes, particularly the deposit guaranty law; while the commissioner insists that the liability of the stockowner springs from the provision of article 16, § 16, of our state Constitution.

Article 16, § 16, of our state Constitution, so far as applicable here, provides:

"The Legislature shall, by general laws, authorize the incorporation of corporate bodies with banking and discounting privileges, and shall provide for a system of state supervision, regulation and control of such bodies which will adequately protect and secure the depositors and creditors thereof. Each shareholder of such corporate body incorporated in this state, so long as he owns shares therein, and for twelve months after the date of any bona fide transfer thereof, shall be personally liable for all debts of such corporate body existing at the date of such transfer, to an amount additional to the par value of such shares so owned or transferred, equal to the par value of such shares so owned or transferred."

The above article of the Constitution, and all the articles of our statute having reference to the bank deposit guaranty fund having application here, were adopted and became effective prior to the filing of the articles of incorporation of the bank in the office of the secretary of state.

Pursuant to the power and duty conferred upon the Legislature by the above provision of the Constitution, the Legislature, under title 14 (Rev. St.), and the several chapters and articles thereunder, undertook to provide a system of supervision, regulation, and control of banking under our state bank laws, intended to adequately protect and secure the creditors and depositors of such institutions.

After providing for the creation of a depositors' guaranty fund in cash, to be paid to the state banking board and deposited with the state treasurer as bailee for the state banking board, and providing that the fund

shall never be diverted from the purpose specified, then follow articles, R. S. 456, 453, 458, 459, 484, 486, and 552, the application of all of which articles are more or less involved under the facts presented. Without quoting the verbiage of the articles at length, we will state only so much of the subject-matter as seems to be involved in the controversy. Article 453 provides that whenever a state bank shall become involved and shall come into the hands of the commissioner of insurance and banking, he may proceed to wind up its affairs through the method provided, the party to give the bond provided, the commissioner to give notices to the banks, etc. Article 456 authorizes the commissioner, on taking possession of the affairs of the bank, to collect all moneys due the bank, and do such other acts as are necessary to conserve its assets and business, and proceed to liquidate the affairs of the bank.

Article 458 provides that upon the order of the district court or the judge thereof, the commissioner may sell or compound all bad or doubtful debts, real and personal property of the bank, on such terms as the court shall direct.

Article 459 provides that the commissioner may, if necessary to pay the debts of the bank, enforce the individual liability of the stockholder.

Article 484 provides that any state bank may, at any time, place its affairs under the control of the commissioner, by posting the notices required.

Article 486 provides that in the event the commissioner takes possession of the bank the depositors specified shall be paid in full out of the cash in said bank that can be made immediately available, and the remainder shall be paid out of the depositors guaranty fund in the event the cash available in the bank shall be insufficient.

Article 552 provides that—

"If default shall be made in the payment of any debt or liability contracted by any bank, * * * each stockholder * * * shall be personally liable for all debts of such corporation existing at the date of such transfer, or at the date of such default, to an amount additional to the par value of such shares so owned * * * equal to the par value of such shares so owned. * * *"

The above-quoted provision of the Constitution makes it clear, under the facts of this case, that appellee is personally liable for the debts of the bank to the extent of the amount sued for. The system of state supervision, regulation, and control of state banks in this state as partially stated in the above articles under the system of state regulation were passed to protect depositors of insolvent banks, availing themselves of the depositors guaranty fund plan. It is evident from the facts disclosed that the bank was insolvent at the time it was taken over by the commissioner; that fact and the regularity of the manner of taking over the affairs of the bank, the ownership of the shares of stock in the insolvent bank, are not questioned by appellant. The only question raised, as we view his contentions, go to the power, authority, and necessity of the commissioner to enforce the individual liability of the stockholders of the bank to reimburse the bank guaranty fund, as advanced by the commissioner to the City National Bank to discharge the debts of the bank assumed by the commissioner in the contract.

Article 453, R. S., confers upon the commissioner the authority and makes it his duty to take charge and wind up the affairs of the state bank and in the manner adopted by the commissioner in this case, on the bank becoming insolvent.

Article 459, R. S., provides that the commissioner may, if necessary to pay the debts of the bank, enforce the individual liability of the stockholder. It has frequently been held in this state and in the federal courts that the question of the necessity for enforcing the individual liability of stockholders, whether in whole or in part, is left to the judgment, discretion, and determination of the Comptroller under the National Banking Act, in case of insolvency of a national bank, and to the commissioner in the case of a state bank. Collier v. Smith (Tex. Civ. App.) 169 S. W. 1108; Brooks v. Austin (Tex. Civ. App.) 206 S. W. 723; Stringfellow v. Patterson (Tex. Civ. App.) 192 S. W. 555; Austin v. Campbell (Tex. Civ. App.) 210 S. W. 277; Harris v. Briggs (C. C. A.) 264 Fed. 726; Kennedy v. Gibson, 75 U. S. (8 Wall.) 505, 19 L. Ed. 478.

Appellant makes the contention that under article 552, R. S., his individual liability for the assessment on his stock arises only in case of default made in the payment of a debt or liability contracted by the bank, and that at the time the affairs of the bank were taken over by the commissioner no default had occurred, nor had such default occurred in its affairs under the management of the City National Bank. The evidence discloses that at the time of the filing of this suit and at the time of the trial no actual default in the payment of any debt or obligation of the bank had occurred by the bank nor by the City National Bank on any of its assumed liabilities of the bank; that is, no debt or other obligation of the bank had been actually presented to the bank, or to the City National Bank for payment or discharge, and payment or discharge had not been made. We have found no case directly holding that the fact of insolvency of a bank is itself a default in the discharge of a debt or other obligation. In Austin v. Campbell, supra, in which a writ of error was refused, and in which insolvency of the bank was shown, and no actual failure or refusal of the bank to discharge a debt or obligation appears to have

occurred, the Texarkana court seemingly held that where the commissioner, after having judicially determined that it was necessary in order to settle the debts of the insolvent bank, an assessment against the stockholders on their individual liability could be made. The article of the Constitution above quoted makes the owner of stock of a state bank in this state liable for all debts of the bank; the liability being incident to the ownership of shares of stock. The enforcement of such liability is provided for by article 459 of the statute, in. which the commissioner may, if necessary to pay the debts of the insolvent bank, enforce the individual liability of the stockholder. That is accomplished by the notice to the stockholder of the assessment, the assessment on the stock, and a call upon the stockholder for the amount assessed.

In Stringfellow v. Patterson, supra, and in Brooks v. Austin, supra, and in fact in none of the cases we have examined, is it alleged that the insolvent bank had refused to discharge a debt or other obligation, or other character of default than insolvency, and the determination of the commissioner of the necessity for the assessment against the shares of stock. Insolvency of the bank and the determination of the necessity for the assessment of the stock seem to be the only conditions precedent to the authority of the commissioner to enforce the individual liability of stockholders.

While possibly, in none of the cases referred to, does the exact point here presented occur, we have concluded that the commissioner, where the bank was insolvent, and he had concluded that it was necessary to enforce the individual liability of stockholders of the insolvent bank to pay the debts of the bank, and where the commissioner had concluded that it was necessary in winding up and settling the affairs of the bank to use the bank guaranty fund and had done so, the commissioner had the power and authority to enforce the individual liability of stockholders to reimburse the guaranty fund so used.

Finding no reversible error, the case is affirmed.