**POOL v. CHAPMAN, State Commissioner of Banking.** (No. 601-4433.) *

(Commission of Appeals of Texas, Section B. May 12, 1926.)

**1. Banks and banking ⬤⟹49(7)—Petition of commissioner of banking, alleging that defendant, former stockholder who had transferred stock when bank's debts exceeded its par value, had refused to pay liability held sufficient.**

Petition of commissioner of banking, alleging that defendant, former stockholder of insolvent bank, had transferred stock within 12 months prior to insolvency, at which time bank owed debts in excess of par value of such stock,

and had refused payment of liability as fixed by commissioner in accordance with law, *held* sufficient.

**2. Banks and banking ⬤⟹48(1), 49(8)—Former stockholder of insolvent bank held not liable, unless bank had debts at time he transferred stock, and this must be proved to make prima facie case.**

Former stockholder of insolvent bank, who had transferred stock within 12 months of insolvency, was not liable as stockholder, unless bank had debts at time of transfer, and existence of debts must be proved to make prima facie case.

**3. Banks and banking ⬤⟹49(8)—Letter of commissioner of banking, declaring it necessary to enforce individual liability of stockholders of insolvent bank, held no evidence that bank had debts when stock was transferred.**

Letter of commissioner of banking, declaring it necessary to enforce individual liability of stockholders of insolvent bank, *held* no evidence that bank had debts a year before commissioner took charge, when stockholder transferred his stock.

**4. Banks and banking ⬤⟹49(8)—Statement of bank's liabilities at time of transfer of certain stock held no evidence of its "debts" in determining former stockholder's liability.**

Statement of bank's liabilities at time of transfer of certain stock *held* no evidence of its "debts" in determining former stockholder's liability, since debts for which stockholder is liable are those in excess of assets.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Debt.]

**5. Banks and banking ⬤⟹49(8)—Former stockholder of insolvent bank may not prove that assets at time he transferred stock were sufficient to meet obligations, where banking commissioner testifies that in his judgment bank was insolvent.**

Former stockholder of insolvent bank may not prove that assets at time he transferred stock were sufficient to meet obligations, where banking commissioner testified that in his judgment bank was insolvent.

**6. Pleading ⬤⟹63—One trying to enforce statutory liability must plead case with same degree of certainty required in bill of indictment, and produce some proof to sustain it.**

One trying to enforce statutory liability must plead case with same degree of certainty required in bill of indictment, and produce some proof to sustain it.

**7. Banks and banking ⬤⟹49(8)—There can be no presumption of insolvency of bank at time of transfer of stock, where it was not shown that any debts existed at that time in excess of its assets.**

In action to enforce liability of former stockholder of insolvent bank, there can be no presumption of insolvency at time of transfer of stock, where it was not shown that any debts existed at that time in excess of its assets.

Error to Court of Civil Appeals of Third Supreme Judicial District.

---

⬤⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Rehearing denied June 9, 1926.

Action by J. L. Chapman, State Commissioner of Banking, against J. B. Pool. Judgment for plaintiff was affirmed by the Court of Civil Appeals (271 S. W. 427), and defendant brings error. Reversed and remanded.

Gib Callaway, of Dallas, for plaintiff in error.

Smith & Woodruff, of Comanche, and Ed J. Hamner, of Sweetwater, for defendant in error.

POWELL, P. J. On May 31, 1921, the Guaranty State Bank of Sipe Springs, Tex., admittedly insolvent, was placed in the hands of the commissioner of banking of this state. On August 18, 1920, one J. B. Pool sold his 30 shares of stock in that bank. Since this sale was made less than 12 months prior to the failure of the bank, the commissioner assessed Pool, along with present stockholders, 100 per cent. on his former stock. He refused to pay, and this suit followed. The district court held him liable. Its judgment was affirmed by the Court of Civil Appeals. See 271 S. W. 427.

[1] The opinion of the Court of Civil Appeals is full. It sets out the constitutional and statutory provisions controlling the question at issue. And we find no fault with the holdings of that court. We merely conclude that there is no evidence in the record that debts existed against the bank when Pool transferred his stock. We think the Court of Civil Appeals correctly held as follows:

"It thus appears that in the interest of the depositors and creditors for whom the commissioner acts, and in order to expedite the administration and final settlement of the insolvent bank's business, and thus protect such depositors and creditors against losses for delay, the commissioner's findings as to a stockholder's liability, and his assessment based thereon, have by the courts, been given a quasi judicial status. Such is the rule laid down in the cases cited. It follows then, necessarily, that when appellant alleged that said bank was insolvent on May 31, 1921, that Pool had transferred his stock, less than twelve months prior thereto; that at the time of said transfer said bank owed debts in excess of the par value of Pool's stock; that appellant had, after investigation, fixed his liability in accordance with law, and demanded payment which was refused; his allegations were sufficient. Under the decisions, when he had proved these essential elements he established a prima facie case of liability against Pool, and as against a general demurrer it is elementary that he would not be required to allege more than it was necessary to prove to make out his case."

[2] We agree that the pleadings were sufficient, but are of the view that the allegations are not sustained in the particular already mentioned by us. A former stockholder cannot be liable, unless debts existed at the date of the transfer of his stock. The commissioner must show this condition to exist before he has made out a prima facie case entitling him to recover. Counsel, in the application for writ of error, admit that the decision of the commissioner as to the insolvency of the bank, as well as the percentage of assessment required to be levied upon the stockholders, is conclusive. This doctrine comes to us from the uniform decisions of the federal courts construing liability of stockholders in national banks. This doctrine has been repeatedly asserted by the various Courts of Civil Appeals in Texas, and writs of error have always been refused. The last case of this kind is that of Bank v. Chapman, 263 S. W. 933. The reasons for this rule are convincing, it seems to us. The federal statute affecting stockholders does not cover former stockholders. But, as stated by the Court of Civil Appeals in the case at bar, the court held, in Austin v. Campbell, 210 S. W. 277, that the same conclusiveness of the decisions of the commissioner would apply to former stockholders as to those who own stock at the time the bank closes. A writ of error was refused in the case just mentioned. And we think it was correctly refused. But in that case it was alleged and proved that debts existed at the date of the transfer of the stock there involved. For instance, we quote from that decision as follows:

"In the pleadings filed in this suit it was alleged that there existed, at the time Campbell transferred his stock, debts of the bank largely in excess of the par value of Campbell's interest which remained unpaid. It was further alleged that it was necessary to enforce the liability of the stockholders in order to pay those debts, and that the commissioner had so determined. Those averments were sufficient, without pleading in detail what debts the bank owed to authorize a judgment against Campbell for the full amount sued for."

In its findings of fact the court stated that the Campbell stock was of the face value of $6,000, and:

"At the time of the transfer from Campbell to Bodenheim, the bank owed debts to the amount of $12,000, which remained unpaid when its affairs were taken over by the commissioner on the date above mentioned."

[3] There is no proof in this record that the bank owed debts in excess of the value of Pool's stock when he sold it. The Court of Civil Appeals seems to think the following language in a letter sent out to all stockholders, past and present, is evidence that debts existed when Pool transferred his stock:

"Whereas, after careful investigation and inquiry, I have determined that in order to pay all debts of the said Guaranty State Bank of Sipe Springs, as provided by law, it will be necessary that the individual liability of the stockholders of said bank shall be enforced, to the full extent of such liability."

That certainly is no evidence of the existence of any debts nearly a year before the

commissioner took charge of the bank. It might be some evidence of debts existing at the time the assessment was made. That question is not before us, and we do not pass upon it.

[4] Counsel for defendant in error, apparently realizing that aforesaid language was not any evidence of debts at the date of the transfer, call our attention-to the fact that the following statement of the liabilities of the bank on the date of this transfer of stock was put in evidence:

| | |
|---|---:|
| Capital stock | $50,000 00 |
| Surplus | 250 00 |
| Profit & loss | 3,045 05 |
| Int. & discount | 6,912 82 |
| Exchange | 7 90 |
| Deposits | 482,927 69 |
| Cashier's checks | 8,963 59 |
| Certified checks | 50 00 |
| Bills payable | 25,000 00 |

Counsel cites no authority in support of his proposition that this would be any evidence of debts within the meaning of the Constitution, and, for that matter, the Court of Civil Appeals cites no authority for their apparent holding that the assessment letter we have already quoted was evidence of any debts within the meaning of the law.

[5] The debts referred to in the Constitution are debts in excess of the assets of the bank. Of course, every bank is indebted to its depositors. Banks frequently borrow money from other banks. The statement last above quoted shows no reason for closing that bank. Many banks, in excellent condition, have liabilities of the same kind there shown. A stockholder is liable for such debts only as the assets of the bank will not pay. If the commissioner had introduced in evidence not only the liabilities of the bank, but a statement of its assets as well, and had testified that in his judgment the bank was insolvent and unable promptly to meet its obligations, then he would have been prima facie entitled to recover. Pool would not be allowed to prove that certain assets of the bank at that time were good, and that they were sufficient to meet the obligations of the bank. But there certainly must be proof that debts in excess of the assets existed in the judgment of the commissioner when the former stockholder sold his stock before he can be held liable. If the bank does not owe debts in excess of its assets, there is no reason why a stockholder should ever be assessed.

[6] This is a statutory liability against Pool. Beginning with the early case of State v. Williams, 8 Tex. 265, our Supreme Court has always held that one trying to enforce such a liability must plead his case with a great degree of certainty. In fact, it is held that the certainty must be of the same degree as would be required in a bill of indictment. Of course, there must be some proof to sustain the necessary pleading.

[7] We are unwilling to go any further than the court did in the case of Austin v. Campbell, supra. Under the holding in that case, there must be proof that debts existed at the date of the transfer of the stock. That is the exact language of the constitutional provision. The lawmakers of Texas evidently did not intend that a stockholder, realizing his bank was already insolvent, should relieve himself of the liability attaching to his stock by selling out shortly before the crash finally comes. But it is equally certain that it was not the intention of the lawmakers to require a stockholder, who sells his stock while the bank is solvent, to pay an assessment on the stock he once owned just because the bank became insolvent after he had disposed of his stock. It is only where the insolvency of the bank relates back to the time when the former stockholder owned his stock that there can be any liability. There could certainly be no presumption of insolvency at the date of the transfer of stock when it is not even shown that any debts existed at that time in excess of its assets.

For the want of any evidence that debts existed as just hereinbefore described by us, we think the judgments of the lower courts must be reversed. As such evidence can probably be supplied when the case is fully developed, we think the cause should be remanded for another trial.

Therefore, for the very reason stated, we recommend that the judgments of the district court and Court of Civil Appeals be reversed, and this cause remanded to the former for another trial.

GREENWOOD and PIERSON, JJ. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.

We approve the holding of the Commission of Appeals on the questions discussed in its opinion.

CURETON, C. J., not sitting.