**SHAW, Banking Commissioner, v. NOYES.**
(No. 3612.)

Court of Civil Appeals of Texas. Texarkana.
Jan. 21, 1929.

Rehearing Denied Jan. 31, 1929.

Jno. W. Goodwin and L. C. Sutton, both of Austin, and Joe T. Goodwin, of Jacksonville, for appellant.

W. F. Moore and Edgar Wright, both of Paris, for appellee.

LEVY, J. (after stating the facts as above). ■ The question for decision is whether, upon the facts stated, the appellee can be compelled, at the suit of the banking commissioner, to pay, as a statutory liability, the assessment levied upon the 11⅔ shares held and owned by him before the reduction of the capital stock of the bank. The question involves a matter of pure law, of the liability at all for the assessment in evidence. The wisdom or necessity of the action of the banking commissioner in making the call or assessment cannot be, in the absence of fraud, judicially questioned by the appellee. The

liability of stockholders for corporate debts, in addition to their stock subscriptions, is entirely dependent upon provisions of law imposing this additional liability. The Constitution of this state has imposed this additional liability. Article 16, § 16, of the Constitution, which relates to incorporation of banks, provides: "Each shareholder of such corporate body incorporated in this state, so long as he owns shares therein, and for twelve months after the date, of any bona fide transfer thereof, shall be personally liable for all debts of such corporate body existing at the date of such transfer, to an amount additional to the par value of such shares so owned or transferred, equal to the par value of such shares so owned or transferred. No such corporate body shall be chartered until all of the authorized capital stock has been subscribed and paid for in full in cash."

Article 535 of the Revised Civil Statutes of 1925, which is a repetition of the constitutional section, reads: "If default shall be made in the payment of any debt or liability contracted by any bank, savings bank or bank and trust company, each stockholder of such corporation, as long as he owns shares therein, and for twelve months after the date of a transfer thereof, shall be personally liable for all debts of such corporation existing at the date of such transfer, or at the date of such default, to an amount double the par value of such shares."

■■ The plain and obvious meaning of the language above is that the stockholders are liable for the debts of the bank to an extent measured by the amount of stock "owned or transferred" by them. The liability is created exclusively for the benefit of the creditors of the bank. It is the intention not to impose an unlimited and absolute liability for all the debts of the bank, but to impose only a liability to pay a sum which comes to or is "equal to the par value of such shares so owned or transferred." And the language makes such liability, and it has been so held, because of one's being a shareholder—that is, because of the ownership of stock, or because of the owner having made bona fide transfer of his stock—at the date of the default or insolvency of the bank. Austin v. Campbell (Tex. Civ. App.) 210 S. W. 277; Pool v. Chapman (Tex. Com. App.) 283 S. W 762; Austin v. Pool (Tex. Civ. App.) 299 S. W. 935. Therefore, in the light of the provision, the appellee, in order to be held liable to pay the assessment in evidence, must be, in fact or in law, a "shareholder" or otherwise within the class held liable by the provision, at the time, and not before, the default or insolvency of the bank. That necessitates consideration of the statutory provision relating to the reduction of capital stock. Liability upon reduction of stock is not expressly declared upon in the constitutional provision. Article 500 of the Revised Civil Statutes, affecting this ques-

tion, reads: "Any banking corporation doing business in this state may at any time reduce its capital stock to any sum not less than the minimum sum provided by law. No reduction of such stock shall be made except upon the written consent of the owners of not less than two-thirds of the stock of such corporation. Notice of the intention to reduce the capital stock shall be published for thirty days in some daily newspaper in the city or county where such bank is located, or in a weekly paper for four insertions before the time when such reduction shall be effected, and the last insertion of such notice shall be at least ten days before the date of the reduction. A statement of such reduction of the capital stock duly acknowledged by the officers of the corporation shall be recorded and filed in the same manner as provided for the original articles of agreement."

The purpose and intention of thus conferring the authority to reduce the capital stock was evidently to accomplish the purposes reflected in the original Banking Act of 1905, 1st Extra Sess., p. 489. The law as first passed expressly provided for reduction of capital stock as a means of curing impairment of capital by reason of loans or otherwise. Section 50 thereof provided: "When the capital stock shall have become impaired to the extent of twenty-five per cent. thereof, by reason of bad loans or otherwise, then such corporation shall cease to do business, unless such capital stock shall have been made good by assessment within sixty days, or reduced equal to the impairment, in the manner provided in the next section."

■■ The next section thereof, section 51, and which is not materially changed, is the present article 500 quoted above. The above-quoted section 50 was amended by the Act of 1909, 2d Called Sess., p. 426, and is the present article 507 of the Revised Civil Statutes. As amended, article 507 removed the former requirement that the bank shall "cease to do business" when the capital stock shall have become impaired to the extent of twenty-five per cent. unless made good within sixty days, and instead thereof forbid the withdrawal of "any part of its capital [by] dividends or otherwise" in case it happened that there was impairment of the capital stock "to such an extent that it is not worth in good resources the full amount paid in after the payment of all liabilities." In other words, that reduction of the capital of the bank cannot be in anywise made upon the contingency that the amount of the capital is so far out of line or not in uniformity with the value of the resources, taking into account the live assets and condition of the bank, as to leave insufficient amount of capital necessary for the payment of all liabilities of the bank. And by article 365 of the Revised Statutes the bank is required "to make good the deficiency" in case of the happening of impairment of capi-

tal stock, upon order of the banking commissioner to do so. A further restriction upon the exercise of the privilege of reduction may, in view of the special circumstances, and as long as they exist, flow out of the requirements of article 506 of the statutes, wherein it is required of the bank, when its business demands it, to increase and maintain the ratio between its capital stock and surplus and deposits. But such latter restriction is removable, and does not then apply, as intended by article 500, in case it happens that the capital stock is too large for the demands of the business of the bank, and there is a desire to change it to a less sum not below the minimum amount allowed by law. As reflected by the act, the purpose and intention is to confer authority of reduction in order to cure reasonable impairment of capital stock by loss, or in case the amount of capital stock is too large for the demands of the bank's business. Accordingly it plainly appears that a bank may exercise the authority conferred to reduce its capital stock when "at any time" there is need to do so to accomplish the purposes for which reduction· is allowable, upon compliance with the prescribed formalities. The expression "at any time," as used, however, manifestly was not intended to confer the absolute right of reduction of capital stock at all events and without regard to the solvency or insolvency of the bank at the time of the reduction. Although the reduction was intended to be advantageous and in the interest of the bank, yet. the exercise of the right to make the reduction was plainly intended to be restricted to the time when detriment would not result therefrom in anywise to depositors and creditors.

The act, taken as a whole, was intended to¹ be, and we think is, consistent and in harmony, and in nowise conflicting, with the constitutional provision relating to the liability of shareholders in a bank. Thus the rights and liabilities of the shareholders upon a reduction of the capital stock may be considered under the evidence appearing. The bank, having an authorized capital stock of $150,000, reduced it to $100,000. The reduction was made in good faith and in the manner and form required by law. Inferably the reduction was to accomplish the purposes allowable by law, and there is no suggestion or contention made to the contrary. The appellee, owning 35 shares of the par value of $100 each, surrendered and had canceled 11⅔ shares, and, in lieu thereof, was issued and received 23⅓ shares of the par value of $100 per share. In the evidence the act of reduction was not void, but was valid and effectual in all things, since it was made in good faith and in the manner and form required by. law, and in the purposes allowable by law. As a legal consequence the appellee's relation of stockholder, as to the 11⅔ shares, legally ceased to exist from the time of reduction;

and he could not thereafter exercise any of the rights peculiar to a stockholder in a corporation as to such number of shares, such as voting, participation in dividends or profits, and the like.

The canceled stock was no longer legally existing, and was incapable of ownership or transfer. Although the act does not expressly say so, yet it contemplates and intends that an authorized reduction of the capital stock, when regularly effected, and at a time and under circumstances when it may properly be done, shall be binding and effectual on the banking corporation and the shareholders and creditors. That would be the legal effect attaching thereto. So that, in this attitude of the appellee, the relation of "shareholder," which gives rise to personal liability for the debts of a bank, did not exist in fact or in law at the date, which was subsequent to the reduction, on which the bank was placed in the hands of the banking commissioner for liquidation. Austin v. Strong (Tex. Com. App.) 1 S.W.(2d) 872.

He could not be held as a transferor within 12 months, of such liquidation, because transfer of stock and reduction of stock are terms entirely different in meaning. Reduction of stock includes the extinguishment of the legal existence of a part of the capital stock. In its ordinary .meaning the word "transfer" carries no other idea than that of passing over a right or title of property in a thing from one to another. 38 Cyc. 940. And, as used in the Constitution, "transfer" is a right which attaches to ownership. Pearre & Co. v. Hawkins, 62 Tex. 434. The 11⅔ shares, being canceled, were not legally existing, nor were they the subject-matter of transfer to another. Nevertheless, in the spirit of the constitutional provision, stockholders may, similar to a transferee, bring themselves within the liability imposed by the provision, upon the reduction of capital stock. In order to disregard the reduction and to enforce payment by a shareholder of the debts of the bank, as though no reduction had taken place, it must appear, in this case, as in all similar cases, that the bank was insolvent at the time of the reduction. Proof of such fact is essential to sustain the right of action to enforce the liability imposed by the constitutional provision. Pool v. Chapman, supra. Such liability cannot be made to depend, conclusively and only, upon the bare fact of the call or assessment upon the appellee to pay the debts of the bank in evidence. A conclusion that would entail such result cannot be reached, in view of the clear declarations of the constitutional provision.

In the present case there is lacking the factual element of insolvency at the time of reduction. By agreement made during the trial of the case, "the issue of insolvency at the time of the reduction of the capital stock" was "withdrawn from this case." And· also

the effect of the evidence was agreed upon that the statements of liabilities and resources of the bank were "not to be considered for the purpose of tending to show insolvency of the bank at the time of reduction of the capital stock." As prompting the agreement the fact may have been that the apparent assets were equal to the debts at that time. In the face of the agreement, presumed insolvency at the time of reduction may not be indulged in the evidence from the bare fact that a month after the reduction the bank was placed in the hands of the banking commissioner, and its assets after liquidation failed to discharge all of its indebtedness. Subsequent debts in excess of the assets of the bank and conditions might have arisen to bring about liquidation proceedings and the inability to pay in full, and the shareholder's liability is not to be determined in the light of subsequent events and losses.

 It is true, as contended by appellant, that the assets of a banking corporation, as represented by its capital stock, is regarded as in the nature of a trust fund, in a sense deemed contractual, for the payment of its existing creditors. From this rule it may follow, in given circumstances, that personal liability will attach to a shareholder for withdrawing and receiving a portion of the capital stock. The remedy is usually in equity, as a fraud upon creditors. But whatever may be the rule in special circumstances, liability cannot be predicated against the appellee in this case. The facts admittedly show, and there is no contention otherwise, that the surplus capital remaining after the reduction to the amount of $100,000 was not withdrawn or distributed among any of the shareholders at the time of reduction or afterwards. Such surplus remained in the bank, and was appropriated as assets in the liquidation of the bank.

The judgment is affirmed.

## On Motion for Rehearing.

The motion recites as follows: "The evidence in this case shows that at the time the bank reduced its capital stock it was owing about a million dollars, and that at the time it failed practically all of this indebtedness existed and was unpaid. The evidence further shows that the bank had been fully liquidated and that the funds derived from the liquidation, together with the previous assessment levied upon the $100,000.00 capital stock of the bank, were insufficient to pay such indebtedness. It is upon this state of facts that we base our contention that the cancelled stock was liable to assessment to pay the debts of the bank existing at the time it reduced its capital stock." We are asked to make findings on the above facts. Such facts appear in the agreed statement of facts, and are here adopted.

In the original opinion we determined, and do here now do so, that, by agreement made during the trial of the case, "the issue of insolvency at the time of the reduction of the capital stock is withdrawn from this case," and also the effect of the evidence was agreed upon that the statements of liabilities and resources of the bank were "not to be considered for the purpose of tending to show insolvency of the bank at the time of reduction of capital stock." In the face of the agreement, presumed insolvency at the time of reduction may not be indulged in the evidence from the bare fact that a month after the reduction the bank was placed in the hands of the banking commissioner, and its assets after liquidation failed to discharge its indebtedness. Consequently the mere fact of reduction would not afford ground of liability for assessment, in the absence of insolvency of the bank at the time of the reduction. Liability against the appellee may not be predicated upon the independent equitable ground of having acted in fraud upon creditors by the act of reducing the capital stock, because, as stated in the original opinion, the rights of creditors were not violated or infringed upon. The facts admittedly show, and there is no contention otherwise, that the surplus capital remaining, after the reduction to the amount of $100,000, was not withdrawn or distributed among the stockholders at the time of reduction or afterwards. Such surplus remained in the bank, and was appropriated as assets in the liquidation of the bank. Hence, the rights of creditors were not in anywise impaired by actual withdrawal or loss of such amount of capital. It was paid over to them in full amount.

The motion is overruled.