### GOSSETT, Banking Com'r, et al. v. HAMILTON.

#### No. 14016.

Court of Civil Appeals of Texas.

Fort Worth.

Oct. 6, 1939.

Rehearing Denied Nov. 24, 1939.

Ocie Speer, of Austin, for appellant Z. Gossett, Banking Com'r.

J. W. Chancellor, of Bowie, for appellant Federal Deposit Ins. Corporation.

Benson & Benson, of Bowie, for appellee.

DUNKLIN, Chief Justice.

The Ringgold State Bank, of Ringgold, Texas, was duly incorporated under the laws of the State, with banking and discounting privileges. On October 1st, 1937, because of its insolvent condition, it was closed by order of the Board of Directors, and placed into the hands of Z. Gossett, Banking Commissioner of the State, for the purpose of liquidation, by virtue of the laws of the State in such cases made and provided. After a careful investigation of its affairs, the Banking Commissioner determined that, in order to pay all the debts of the bank, it was necessary that the individual liabilities of the stockholders of the bank, as provided by Art. 535 of the Revised Civil Statutes of 1925, Vernon's Ann.Civ.St. art. 535, be enforced

to the full amount of such liabilities, and thereupon assessed each stockholder of the bank and every stockholder who with bona fide intent transferred his stock within 12 months previous to the 1st day of October, 1937, an amount equal to the probable value of such shares so owned or transferred, and directed that the same be paid over to the banking commissioner, at Austin, Texas, or to the special agent appointed by the commissioner in charge of the liquidation of the bank, at his office in Ringgold, Texas.

On the 7th day of September, 1937, which was some 23 days before said assessment was made, the bank was indebted to divers depositors in the aggregate sum of $41,019.36. On October 1st, 1937, when it was taken over by the banking commissioner, it was indebted to its divers depositors in the sum of $66,000. The indebtedness at that time included $16,000 of deposit liabilities existing on September 7th, 1937, which had not been discharged by the bank in regular course of business between September 7th, and October 1st, 1937.

The Federal Deposit Insurance Corporation issued its policy of insurance covering deposits in the bank, as authorized by the laws of the United States, and during the liquidation of the business of the bank by the Banking Commissioner, it paid to him the full amount of all the deposits then outstanding and unpaid, which included the $16,000 deposits, as of date September 7, 1937. Thereafter, the intervener took an assignment from the depositors of their respective deposits, including the $16,000 deposits due and unpaid on September 7th, 1937.

In the process of liquidating the bank, the banking commissioner has paid a dividend to its creditors of 45 per cent of the amount of their respective claims. After crediting said dividend, there was left unpaid 55 per cent of the $16,000 of deposit liabilities of the bank, on September 7th, 1937.

Roy D. Hamilton was a shareholder in the bank, owning ten shares of its capital stock, of the par value of $100 per share, on September 7th, 1937, and likewise on October 1st, 1937.

This suit was instituted by Z. Gossett, banking commissioner of Texas, in his right as such official, and also for the benefit of all creditors of the bank, against Roy D. Hamilton, to recover $1,000, the full face value of the ten shares of stock so owned by him, upon allegations of the foregoing facts, and basing his right of recovery on one of the provisions of Art. 16, sect. 16, of the State Constitution, hereinafter noted, and Art. 535, Revised Civil Statutes of Texas, enacted in pursuance thereof, both of which were in full force and effect on September 7th, 1937, but both of which were repealed by virtue of the amendment of Art. 16, sect. 16, of the Constitution, Vernon's Ann.St., which became effective on September 8th, 1937.

The Federal Deposit Insurance Corporation, by leave of court, filed a plea of intervention in which it adopted the allegations of plaintiff's petition and sought a recovery against Roy D. Hamilton, under and by virtue of the provisions of Art. 16, sect. 16, of the Constitution, before its amendment, and Art. 535, Rev.Civ.St., and also as assignee of the holders of the deposits, as shown above. But with the express allegation that it neither admitted nor denied the rights of the banking commissioner to recover the same.

The defendant filed a general demurrer and general denial to plaintiff's petition.

By special exception, defendant challenged the legal right of the intervener as a creditor of the Ringgold State Bank to intervene in the suit and recover the judgment prayed for.

The case was tried before a jury and at the conclusion of the evidence introduced, the court granted defendant's motion for an instructed verdict in his favor; and from a judgment rendered upon the verdict returned, in obedience to that instruction, plaintiff and intervener have prosecuted this appeal.

Following is a copy of Art. 16, sect. 16, of the Constitution, in force on September 7th, 1937:

"Sec. 16. The Legislature shall by general laws, authorize the incorporation of corporate bodies with banking and discounting privileges, and shall provide for a system of State supervision, regulation and control of such bodies which will adequately protect and secure the depositors and creditors thereof.

"Each shareholder of such corporate body incorporated in this State, so long as he owns shares therein, and for twelve months after the date of any bona fide transfer thereof shall be personally liable for all debts of such corporate body existing at the date of such transfer, to an

amount additional to the par value of such shares so owned or transferred, equal to the par value of such shares so owned or transferred.

"No such corporate body shall be chartered until all of the authorized capital stock has been subscribed and paid for in full in cash. Such body corporate shall not be authorized to engage in business at more than one place which shall be designated in its charter.

"No foreign corporation, other than the national banks of the United States, shall be permitted to exercise banking or discounting privileges in this State."

Art. 535, Rev.Civ. Statutes, Vernon's Ann.Civ.St. art. 535, reads:

"If default shall be made in the payment of any debt or liability contracted by any bank, savings bank or Bank and Trust Company, each stockholder of such corporation, as long as he owns shares therein, and for twelve months after the date of the transfer thereof, shall be personally liable for all debts of such corporation existing at the date of such transfer, or at the date of such default, to an additional amount equal to the par value of such shares. Shares of stock in such a banking corporation shall be transferable only on the books of the corporation, and it shall be the duty of the officers of the corporation to make such transfer upon the books at the request of the transferror or transferee. In any suit to establish a stockholder's liability on any obligation as stockholder, the transferror or transferee of stock may be joined in one action and the liabilities of both parties determined therein."

Said Sect. 16 of Art. 16 of the Constitution was so amended as to eliminate therefrom the provision embodied in its second paragraph fixing liability of stockholders in banks therein referred to; thus repealing that paragraph and rendering Art. 535, Revised Statutes, no longer in force.

At the outset, we conclude that if defendant, as a stockholder, was liable for the debts owing by the bank to its depositors on September 7th, 1937, under the provisions of Art. 16, sect. 16, of the Constitution, and Art. 535, Rev.St., then in force, then such liability was a property right, which was not destroyed by the repeal of the second provision of said sect. 16, which became effective on September 8, 1937, and Art. 535, Rev.Civ.St.

So the only question to be determined by us here is whether or not on the trial of the case in the court below plaintiff made out a prima facie showing of liability of defendant for the deposits owing by the bank on September 7th, 1937, and right of the Banking Commissioner to recover therefor.

From a careful consideration of the authorities, we have reached the conclusion that the liability of defendant as a stockholder in the Ringgold State Bank was contractual. The Constitutional provision making shareholders in the bank liable for its debts, entered into and became a part of defendant's contract of purchase of his stock, as much so as if it had been in his certificate of stock. He could not acquire and enjoy its benefits and escape the burden imposed thereon by the Constitution and statute. Section 182, 10 Tex. Jur. page 316, and numerous authorities there cited, including, among others, Kerr v. Galloway, 94 Tex. 641, 644, 64 S.W. 858; Winder Bros. v. Sterling, 118 Tex. 268, 12 S.W.2d 127; West River Bridge Co. v. Dix, 6 How. 507, 540, 12 L.Ed. 535, 548; City of Abilene v. Sayles, Tex.Com. App., 295 S.W. 578; Globe Indemnity Co. v. Barnes, Tex.Com.App., 288 S.W. 121; Southern Surety Co. v. Klein, Tex.Civ.App., 278 S.W. 527, writ of error refused.

Following is quoted from the majority opinion in Coombes v. Getz, 285 U.S. 434, 52 S.Ct. 435, 76 L.Ed. 866:

"This is a suit brought in a California superior court by petitioner, on behalf of himself and other creditors, to recover from respondent, a director in Getz Bros. & Company, a California corporation, the amount of an indebtedness upon an open account for goods sold to the corporation by petitioner's assignor. The basis of the liability sought to be enforced is found in the following provision of section 3, art. 12, of the California Constitution of 1879:

"'The directors or trustees of corporations and joint-stock associations shall be jointly and severally liable to the creditors and stockholders for all moneys embezzled or misappropriated by the officers of such corporation or joint-stock association, during the term of such director or trustee.'

"The bill alleges misappropriation and embezzlement of moneys of the corporation by its officers, with appropriate details to bring the respondent within the terms of the foregoing provision. The superior

court sustained a demurrer to the complaint, for reasons not material here, and rendered final judgment accordingly. An appeal was taken to the state supreme court; and, while that appeal was pending, the provision of the state constitution above quoted was repealed. Thereupon, respondent moved to dismiss the appeal, on the ground that the cause of action had abated by reason of the repeal of the provision of law upon which it was based. The court sustained the motion and dismissed the appeal, Coombes v. Franklin [213 Cal. 164] 1 P.(2d) 992; and subsequently denied a petition for rehearing [213 Cal. 164] 4 P.(2d) 157.

"In substance, it was held that the right accorded to corporate creditors was created by, and dependent alone upon, the constitutional provision, said to have the force of a statute; and that when that was repealed, the right fell with it, being still inchoate, not reduced to possession nor perfected by final judgment. It was conceded that the liability created by the Constitution was in its nature contractual and, as a matter of law, entered into and became a part of every contract between the corporation and its creditors. But this contractual liability, it was said, was conditioned by the power reserved over corporate laws by section 1, art. 12, of the Constitution, as follows:

" 'All laws now in force in this State concerning corporations, and all laws that may be hereafter passed pursuant to this section, may be altered from time to time or repealed.'

\* \* \*

"The authority of a state under the so-called reserved power is wide; but it is not unlimited. The corporate charter may be repealed or amended, and, within limits not now necessary to define, the interrelations of state, corporation, and stockholders may be changed; but neither vested property rights nor the obligation of contracts of third persons may be destroyed or impaired. [Citing authorities.] The right of this petitioner to enforce respondent's liability had become fully perfected and vested prior to the repeal of the liability provision. His cause of action was not purely statutory. It did not arise upon the constitutional rule of law, but upon the contractual liability created in pursuance of the rule. Although the latter derived its being from the former, it immediately acquired an independent existence competent to survive

the destruction of the provision which gave it birth. The repeal put an end to the rule for the future, but it did not and could not destroy or impair the previously vested right of the creditor (which in every sense was a property right, Ettor v. Tacoma, 228 U.S. 148, 156, 33 S.Ct. 428, 57 L.Ed. 773, [778]; Pritchard v. Norton, 106 U.S. 124, 132, 1 S.Ct. 102, 27 L.Ed. 104 [107]) to enforce his cause of action upon the contract. [Citing authorities.]"

Those conclusions were followed by an extended review of other decisions of the same court, to the same effect, and the following was cited with approval from Pac. Mail S. S. Co. v. Joliffe, 2 Wall. 450, 17 L.Ed. 805:

"When a right has arisen upon a contract, or a transaction in the nature of a contract authorized by statute, and has been so far perfected that nothing remains to be done by the party asserting it, the repeal of the statute does not affect it, or an action for its enforcement. It has become a vested right which stands independent of the statute."

And the opinion concludes as follows:

"The creditor extended credit to the corporation; and his action in so doing, under the state constitutional provisions, brought into force for his benefit the constitutional obligation of the director, which, by becoming a director, the latter had voluntarily assumed and, thereby, in the eye of the law, created against himself a contractual liability in the nature of a suretyship. Harrison v. Remington Paper Co., supra [72 C.C.A. 405], 140 F. [385] 388, 3 L.R.A.(N.S.) 954, 5 Ann.Cas. 314. Doubts which otherwise might have existed in respect of the character and effect of the transaction are no longer open. It is settled by decisions of this and other federal courts (Ettor v. Tacoma [228 U.S. 148, 33 S.Ct. 428, 57 L.Ed. 773,] and cases cited in connection therewith, supra) that, upon the facts here disclosed, a contractual obligation arose; and the right to enforce it, having become vested, comes within the protection of both the contract impairment clause in Article 1, § 10 [U.S.C. A.], and the due process of law clause in the Fourteenth Amendment, of the federal Constitution [U.S.C.A.].

"Decree reversed."

In the following decisions it was held that Art. 16, sect. 16, of the Constitution, on which the suit was founded, is self executing: Fellows v. Shaw, Tex.Civ.

App., 66 S.W.2d 741; Austin v. Campbell, Tex.Civ.App., 210 S.W. 277, writ of error refused; Chapman v. Pettus, Tex.Civ.App., 269 S.W. 268, writ of error refused.

In Shaw v. Green, 128 Tex. 596, 99 S.W.2d 889, 893, by our Supreme Court, this is said:

"There are apparent conflicts in the decisions as to the nature of the stockholder's added liability, whether it is to be considered contractual or statutory. See Austin v. Strong, 117 Tex. 263, 268, 1 S.W.2d 872, 3 S.W.2d 425, 79 A.L.R. 1528; Austin v. Guaranty State Bank of Fulbright, Tex.Civ.App., 282 S.W. 262; Orndorff v. Austin, Tex.Civ.App., 294 S.W. 681; Richmond v. Irons, 121 U.S. 27, 7 S.Ct. 788, 30 L. Ed. 864; Matteson v. Dent, 176 U.S. 521, 20 S.Ct. 419, 44 L.Ed. 571; McClaine v. Rankin, 197 U.S. 154, 25 S.Ct. 410, 49 L.Ed. 702, 3 Ann.Cas. 500; Christopher v. Norvell, 201 U.S. 216, 26 S.Ct. 502, 506, 50 L.Ed. 732, 5 Ann.Cas. 740; Thomas v. Matthiessen, 232 U.S. 221, 34 S.Ct. 312, 58 L.Ed. 577; 3 R.C.L. § 37, pp. 410, 411. The liability is neither wholly contractual nor wholly statutory. The relation of the stockholder to the bank, as pointed out by Judge Leddy in Austin v. Strong, supra, is contractual in its nature. Until that relation is once created, with the voluntary assent of the party, he does not become individually responsible for any of the bank's debts. As to him it may be said that his liability has its origin in the contract by which he becomes a stockholder. However, the liability to which he binds himself by becoming a stockholder is created or imposed by the Constitution (Article 16, § 16) and the statute."

We believe that decision clearly implies that the obligation of the shareholder imposed by the Constitution and Art. 535, Rev.St., originated with and became effective at the time defendant acquired his stock; just as we believe the language of the Constitution and statute indicated.

In Pool v. Chapman, 283 S.W. 762, 764, by the Commission of Appeals, the Banking Commissioner sought to recover from Pool the face value of certain shares of bank stock he had sold to another within 12 months next preceding the date of such transfer. This was said in the opinion of the Commission of Appeals:

"The debts referred to in the Constitution are debts in excess of the assets of the bank. Of course, every bank is indebted to its depositors. Banks frequently borrow money from other banks. The statement last above quoted shows no reason for closing that bank. Many banks, in excellent condition, have liabilities of the same kind there shown. A stockholder is liable for such debts only as the assets of the bank will not pay. If the commissioner had introduced in evidence not only the liabilities of the bank, but a statement of its assets as well, and had testified that in his judgment the bank was insolvent and unable promptly to meet its obligations, then he would have been prima facie entitled to recover. Pool would not be allowed to prove that certain assets of the bank at that time were good, and that they were sufficient to meet the obligations of the bank. But there certainly must be proof that debts in excess of the assets existed in the judgment of the commissioner when the former stockholder sold his stock before he can be held liable. If the bank does not owe debts in excess of its assets, there is no reason why a stockholder should ever be assessed.

"This is a statutory liability against Pool. Beginning with the early case of State v. Williams, 8 Tex. [255] 265, our Supreme Court has always held that one trying to enforce such a liability must plead his case with a great degree of certainty. In fact, it is held that the certainty must be of the same degree as would be required in a bill of indictment. Of course, there must be some proof to sustain the necessary pleading.

"We are unwilling to go any further than the court did in the case of Austin v. Campbell, supra. Under the holding in that case, there must be proof that debts existed at the date of the transfer of the stock. That is the exact language of the constitutional provision. The lawmakers of Texas evidently did not intend that a stockholder, realizing his bank was already insolvent, should relieve himself of the liability attaching to his stock by selling out shortly before the crash finally comes. But it is equally certain that it was not the intention of the lawmakers to require a stockholder, who sells his stock while the bank is solvent, to pay an assessment on the stock he once owned just because the bank became insolvent after he had disposed of his stock. It is only where the insolvency of the bank relates back to the time when the former stockholder owned his stock that there can be any liability. There could certainly be no presumption of insolvency at the date of the transfer of stock when it is not even

shown that any debts existed at that time in excess of its assets.

"For the want of any evidence that debts existed as just hereinbefore described by us, we think the judgments of the lower courts must be reversed."

Our Supreme Court expressly approved the holding of the Commission of Appeals on the questions discussed in the opinion.

After the decision of the Commission of Appeals, the Pool case was remanded to the trial court for another trial, and on the second appeal, the Court of Civil Appeals at Eastland (Austin v. Pool, 299 S.W. 935), in opinion by Justice Hickman, followed and reaffirmed the conclusions of the Commission of Appeals shown above, and affirmed the judgment of the trial court, denying the recovery sought by the Banking Commissioner against Pool, on a finding by the jury that all the debts owing by the bank at the time Pool sold his stock were paid at the time of or before the bank was placed in the hands of the Banking Commissioner, and our Supreme Court refused a writ of error to that decision. The same ruling was made by the Austin Court of Appeals, in Carter v. Brand, 106 S.W.2d 332.

Neither of those decisions involved the question of liability of an original shareholder who had never disposed of his stock; and counsel for appellee argues that according to the very letter of the constitutional provision in question, the same requirement of proof of debts in excess of liability of the bank is applicable in this suit against defendant, who has never transferred his stock, and that therefore no liability was established against him for the face value of his stock, because of lack of proof that the debts owing by the bank on September 7th, 1937, exceeded the amount of its assets; that date being the last day preceding the date the constitutional amendment became effective, and 23 days before the bank closed its doors and was taken over by the Banking Commissioner, by reason of its then insolvent condition.

Appellee then calls attention to the lack of such proof of insolvency of the bank on September 7th, 1937, the date on which liability of defendant was sought to be fixed, and cites Brenan v. Eubank, Tex.Civ. App., 56 S.W.2d 513, and Milmo Nat. Bank v. Cobbs, Tex.Civ.App., 128 S.W. 151, writ of error denied in rebuttal of any presumption of such insolvency on that date, arising from the fact of insolvency 23 days

later when the Banking Commissioner took charge; also this announcement by the Commission of Appeals in the Pool case cited above: "There could certainly be no presumption of insolvency at the date of the transfer of stock when it is not even shown that any debts existed at that time in excess of its assets."

All the authorities recognize the rule that in order to show liability of the shareholder, under and by virtue of the provisions of Art. 16, sect. 16, of the Constitution, before its amendment, or under Art. 535, Rev.Civ.St., plaintiff must bring the case strictly within the letter of such enactments, and that the same must clearly support the contention, as announced in Pool v. Chapman, Tex.Com.App., 283 S.W. 762.

The provision of sect. 16, of Art. 16, of the Constitution, before its amendment, clearly imposes upon a shareholder who has made a bona fide transfer of his stock, liability for all debts of such corporate body existing at the date of such transfer.

But with respect to an original shareholder who has never transferred his stock, the provision is confusing, to say the least, in that, according to a strict interpretation of its wording, the liability of the original stockholder who has never transferred it, is for debts "existing at the date of such transfer" of the stock—a contradiction of terms. In the opinions that constitutional provision is usually construed as making a shareholder who has never transferred his stock liable for all the debts of the bank, regardless of when they are incurred. But whether such construction is correct, we deem it unnecessary to decide, because we believe Art. 535, Rev.St., passed by authority of the first section of Art. 16, sect. 16, was sufficient to impose on a shareholder who has never transferred his stock liability for all debts of the bank existing at the date of default in their payment when due.

Although the obligation of the stockholder to pay the debts of the bank is one of its assets which the Banking Commissioner may collect, after he has taken charge of the bank, yet it is clear from the opinion of the Commission of Appeals in Pool v. Chapman, supra, that the assets which the court referred to in the opinion were other assets, such as bills receivable and properties, and not the obligations of the stockholders to pay the bank's debts. The Constitution and Art.

304

535 are both silent as to that question, and the decision in the above case manifests an interpretation of those enactments in accordance with the conclusion reached, which we believe is controlling here, especially in the absence of any later decision to the contrary on that point. And we may add that according to the holding in that case, and as announced in many other decisions in other jurisdictions, the obligation of the stockholder to pay the bank's debts is that of a surety for the bank. See Hawthorne v. Calef, 2 Wall. 10, 17 L.Ed. 776; Coombes v. Getz, U. S. Supreme Court, supra, and authorities there cited; also Winchester v. Howard, 136 Cal. 432, 64 P. 692, 69 P. 77, 89 Am.St.Rep. 153.

Indeed, that such is the character of the stockholder's liability is implied from the language employed in the beginning of Art. 535, viz., "If default shall be made in the payment of any debt or liability contracted by any bank, savings bank or Bank and Trust Company, each stockholder of such corporation, as long as he owns shares therein, and for twelve months after the date of the transfer thereof, shall be personally liable for all debts of such corporation existing at the date of such transfer, or at the date of such default," etc. 7 American Jurisprudence, sect. 97, p. 80.

In Austin v. Duffer, Tex.Civ.App., 279 S.W. 318, 324, writ of error refused, this is said:

"We believe we are justified in saying that there is an unbroken line of decisions * * * holding the Comptroller of the Currency of the United States, whose powers over national banks are similar and in many respects identical with the powers of the state banking commissioner over state banks, is authorized to decide when it is necessary to institute proceedings against the stockholders to enforce their personal liability, and whether the whole or a part, and if only a part, how much shall be collected. These questions are referred to his judgment and discretion, and his determination is conclusive. The stockholders cannot controvert it. It is not to be questioned in the litigation that may ensue. He may make it at such time as he may deem proper, and in such amount as shall be satisfactory to him, not to exceed 100 per cent., however."

That general statement is found in many other decisions, such as Heldenfels v. Chapman, Commissioner, Tex.Civ.App., 283 S. W. 179; Chapman, Commissioner v. Sparks,

Tex.Civ.App., 283 S.W. 338; Markus v. Austin, Commissioner, Tex.Civ.App., 284 S.W. 326; Austin v. Guaranty State Bank, Tex.Civ.App., 300 S.W. 129; Howard v. Republic Bank & Trust Company, Tex. Civ.App., 76 S.W.2d 187, writ refused; Houston National Exchange Bank v. Chapman, Tex.Civ.App., 263 S.W. 929; Pool v. Chapman, Tex.Civ.App., 271 S.W. 427; Brooks v. Austin, Commissioner, Tex.Civ. App., 206 S.W. 723; Chapman v. Pettus, Tex.Civ.App., 269 S.W. 268, writ refused; Markus v. Austin, Tex.Civ.App., 284 S.W. 326; Ragland v. Austin, Tex.Civ.App., 284 S.W. 330; Collier v. Smith, Tex.Civ.App., 169 S.W. 1108; Shaw, Commissioner v. Noyes, Tex.Civ.App., 13 S.W.2d 443.

However, in one of those cases, viz., Pool v. Chapman, Tex.Civ.App., 271 S.W. 427, that general rule of conclusiveness of all findings of the Banking Commissioner was announced, and by reason thereof, the Court of Civil Appeals held that the decision of the Banking Commissioner of insolvency of the bank at the time the stock in question was transferred, was conclusive. But a writ of error to that opinion was granted, and, as shown in the opinion of the Commission of Appeals, with express approval of the Supreme Court, in Pool v. Chapman, 283 S.W. 762, supra, that holding was overruled.

■ The authority of the Banking Commissioner to take over the assets of the bank on October 1st, 1937, on account of its insolvent condition at that time, as found by the Commissioner, cannot be questioned, and is not challenged by defendant in this case. After he had taken charge, he stood as the legal representative of creditors and stockholders, with authority as such representative to liquidate the bank in accordance with the powers vested in him by the statutes in such cases made and provided, just as a receiver represents creditors and owners of property placed in his hands. But his actions in liquidating the bank's affairs are within constitutional and statutory limitations. Any steps taken by him, either by suit or by assessments, to collect a debt owing to the bank as a part of its assets, must be by authority of statutes that are not in contravention of provisions of the Constitution.

Nor did Art. 535 of the statutes, under which the Banking Commissioner undertook the liquidation of the bank, purport to confer upon him authority to pursue any course in his attempt to enforce collection

of defendant's liability for the debt sued for, that would be violative of constitutional restrictions.

 The insolvency of the bank on September 7th, 1937, was a necessary condition precedent to the liability of the stockholder for the debts then owing by the bank, notwithstanding its insolvency 23 days later. To allow a recovery against defendant in this action, solely by reason of the summary assessment by the Banking Commissioner, after taking over the bank, and without proof of insolvency on September 7th, 1937, would be to deprive him of his property rights, contrary to the constitutional guaranty of due process of law. Vernon's Ann.St.Const. art. 1, § 19. The rule of public policy, announced as the reason for the conclusiveness of the findings of the Banking Commissioner in such matters, could not be given effect to destroy rights guaranteed to the stockholder by the Federal and State Constitutions. And in this connection the amendment of Art. 16, sect. 16, of the Constitution, Vernon's Ann. St., and the amendment of Art. 535, Rev. St., Vernon's Ann.Civ.St. art. 535, to conform thereto, so as to eliminate the former liability of stockholders of such banks, indicate a public policy to remove that burden on the stockholders in order to encourage investments in the banking business, in which the public is vitally interested. The Constitution and Statutes are the highest expressions of public policy of the State.

 It is our conclusion that the constitutional amendment repealing the provisions of sect. 16 of Art. 16 of the former constitution, providing for added liability of a stockholder in banks therein specified and the consequent repeal of Art. 535 of Rev.St. in force at the time that amendment became effective, did not operate to destroy the binding effect of defendant's contractual obligation to pay debts of the bank, arising from his ownership of stock, before such repeal, because the same was a vested property right in the creditors of the bank, which was secured to them by the then existing provisions of the Constitution and statute.

But it is our further conclusion that plaintiff, Banking Commissioner, failed to make out a prima facie showing of right to the judgment sought against the defendant in the absence of any competent evidence of the insolvency of the bank on September 7th, 1937, and therefore the court did not err in rendering judgment in favor of the defendant, Roy D. Hamilton, appellee here, as against the suit of plaintiff, Z. Gossett, Banking Commissioner, and also as against the intervener, Federal Deposit Insurance Corporation.

And we will add that it is unnecessary for us to determine whether intervener had the right to intervene, because, as shown by the plea of intervention, the Intervener's suit was based on the facts alleged in plaintiff's petition, with claim of right of subrogation to the asserted right of the depositors in the bank on September 7th, 1937, to hold defendant liable for their deposits, arising from payment by intervener of those depositors' claims. And on the trial, Intervener relied solely upon the evidence offered by plaintiff and already noted.

Judgment affirmed.